O’NIELL, Chief Justice.
 

 Mrs. Mamie Jackson Olsen owns the three-story brick building No. 325 Bourbon street, and Charles Tung owns the three-story brick building No. 319 Bourbon street, adjoining the property of Mrs. Olsen. The building which she now owns was built when both lots belonged to the same owner, many years ago — perhaps as long as eighty years ago. Thereafter, the owner of the two lots sold first the lot now owned by Charles Tung, and described it by a survey which placed the dividing line exactly at the outside surface of the wall of the building now owned by Mrs. Olsen. Hence the wall between the Olsen property and the Tung property is on Mrs. Olsen’s ground, at the surface of the ground ; but, being eighteen inches thick, it has an underground foundation or footing five? feet thick, including the thickness of the wall itself ; so that the base of the wall, a few feet below the surface of the ground, is twenty-one inches wider on each side of the wall than the thickness of the wall itself, and, to that extent, the foundation of the wall is on Tung’s lot.
 

 Tung bought his lot in 1924, and in that year had his three-story brick building erected, in which he has ever since conducted a large laundry, called “Oriental1 Laundry.”
 

 In the construction of the laundry building, Tung did not take advantage entirely of the right given to him by articles 680 and 684 of the Civil Code, to make his neighbor’s wall “a wall in common” and to “cause beams or joists to be placed within two inches of the whole thickness of the wall,” etc. But he did utilize the wall to some extent, in the construction of his own building; and the question in this case is whether he is making such use of the wall that, according to article 684 of the Civil Code, he must pay the owner one-half of the value of the wall.
 

 Mrs. Olsen, having bought the property No. 325 Bourbon street in 1930, brought this suit against Tung: First, for $1,697.50, for half of the value of her brick wall; and, second, for $222.69 damages to the plastering in her building, said to have been caused by vibration resulting from the operation of the machinery in Tung’s laundry; and, third, for an injunction against his operating his ma
 
 *765
 
 chinery so as to cause the wall of Mrs. Olsen’s building to shake or vibrate. Tung denied that he was making use of' Mrs. Olsen’s wall, or had converted it into a “wall in common,” denied that the operation of his machinery had damaged her building, and denied that the operation of the machinery was causing excessive vibration, or noise, or was a nuisance in any sense — particularly because the many other establishments using machinery and other noisy contrivances in that busy neighborhood were causing more noise and disturbance than the Oriental Laundry could cause. Tung pleaded, especially, that Mrs. Olsen was estopped, and without right to complain, because she had full knowledge, or ample opportunity to know, of the conditions prevailing in the Oriental Laundry, before and at the time when she bought the adjoining property.
 

 The judge who tried the case gave judgment in favor of Mrs. Olsen for $1,450, for half of the value of her wall, but rejected her demand for damages and the demand for an injunction. Tung has appealed from the decision. Mrs. Olsen, answering the appeal, asks that the judgment be amended by the granting of the injunction, by increasing the amount allowed for half of the value of the wall to $1,697.50, and by allowing the claim of $222.69 for damage to the plastering in her building. She claimed also in her petition $500 for fees or compensation of experts employed by her to ascertain her rights; but she admits that, as she offered no evidence to support the claim, it has passed out of the case, except that she may hereafter ask to have the fees of the experts taxed as court costs.
 

 We concur in the conclusion of the judge who tried the case that the evidence does not sustain Mrs. Olsen’s claim for damages to the plastering in her building. The judge, at the request of the attorneys on both sides, and in company with them, inspected the premises, and found that the vibration in Mrs. Olsen’s building, from the operation of the machinery in the Oriental Laundry, was very slight, and not sufficient to cause any damage to Mrs. Olsen’s building.
 

 We concur also in the conclusion of the judge who tried the case that Mrs. Olsen is not entitled to an injunction to forbid the operation of the machinery in the Oriental Laundry in a way to cause the wall of her building to shake or vibrate. The vibration, which is very slight and not at all harmful to Mrs. Olsen’s building, is unavoidable when the laundry machinery is in operation. The ground floor of the Olsen building is suited only to commercial establishments, and was, when this suit was filed, occupied by a corporation in the clothes-cleaning or laundry business. The second and third floor of the building were leased and used for a rooming house, catering to a class of unconventional patrons whose occupations induced them to lodge in a busy section of the city, and to do their sleeping in the daytime. They are the only class of sleepers whose rest could be disturbed by the Oriental Laundry, because it is never in operation at night or on Sundays. The machinery was driven by steam, when the laundry was established, in 1924, but in 1929 electric motors were substituted for the steam engine, and the change did away, with most of the noise and vibration. The neighborhood itself, however,' within a radius of
 
 *767
 
 several blocks, is an abiding place for noises and disturbances, incident to night clubs, dance halls, garages, and parking places, and, erstwhile, soft-drink rendezvous. Rue Bourbon is one of the very narrow streets, in the original French quarter, with a car line on it. At 314 Bourbon, across the street from the Olsen property, is the American Garage, with its noisy parking space. At 315 Bourbon street, immediately beside the Oriental Laundry, is the electric power plant of the New Orleans Public Service, Inc. And the judge who tried the case said, in his reasons for judgment, that he observed when he inspected the premises that the electric power plant made as much noise as — if not more noise than — the Oriental Laundry made when in operation. And adjoining Mrs. Olsen’s property in the rear is the Sanitary Troy Laundry, using a steam engine to run the machinery, and running night and day. If the Oriental Laundry should be deemed a nuisance in the way in which it is being operated, at 319 Bourbon street, and should be suppressed as such, it would not be easy to find a suitable location for it in New Orleans. The locality, the occupation of the inhabitants' of the neighborhood, the environment, is what determines whether an establishment which uses necessarily noisy machinery is a nuisance. A manufacturing enterprise that would be a nuisance in one locality might not be so in another. The inhabitants of large cities that are sustained by manufacturing and commercial enterprises must bear the unavoidable discomforts and annoyances thereof. Le Blanc v. Orleans Ice Mfg. Co. 121 La. 249, 46 So. 226, 17 L. R. A. (N. S.) 287; 20 R. C. L., p. 441, § 55. Noises and vibrations from the operation of machinery cannot be deemed a nuisance, subject to injunction, unless they are unreasonable in degree; and the question of reasonableness in that respect is a question of fact depending mainly upon the location of the establishment, its relation to other property, and particularly to other- sources of noise or vibration. 20 R. C. L. p. 445, § 60; Orton v. Virginia Carolina Chemical Co., 142 La. 790, 77 So. 632. Although a laundry may be so conducted as to be a nuisance, the operating of a laundry is not a nuisance per se. 46 C. J. p. 714, § 212. The evidence in this instance shows that the defendant’s laundry is operated as quietly, and with as little vibration or annoyance, as could be reasonably required. The judge was right, therefore, in refusing to grant the injunction.
 

 We have concluded also that the judgment is correct in allowing Mrs. Olsen compensation for the use of her wall. The one of the defenses set up by Charles Tung which impressed us most was that both buildings were already constructed with the underground foundation of the wall of what is now Mrs. Olsen’s building projecting twenty-one inches beyond the property line and on Tung’s property and actually supporting his building, when Mrs. Olsen acquired her property. It is not contended by the attorneys for Tung that, if he owes half of the value of the wall, for having made use of it, the debt is due to the one who owned the wall when he (Tung) first made use of it. It seems to be conceded by counsel for Tung that, if the use which he has made of the wall' has obliged him to pay half of the value of it, Mrs. Olsen is entitled to the payment for Tung’s continuing to use the wall, without having com
 
 *769
 
 pensated any owner for the use of it. The attorneys for Tung invoke the doctrine of destination du pSre de famille, not only because of the projection of the base or foundation of the wall under the surface . of the adjoining lot, but because a former owner of that lot used the neighbor’s wall to support a building which was demolished when Tung’s building was constructed. In that respect the facts of the ease are as they were in Murrell v. Fowler, 3 La. Ann. 165, and in Woodcock v. Baldwin, 51 La. Ann. 989, 26 So. 46; in which cases it was held that the doctrine of destination du pére de famille did not relieve the defendant of the obligation to pay the plaintiff half of the value of the latter’s wall, which the defendant made use of. In Murrell v. Fowler, the court said;
 

 “The wall is entirely on the land of the plaintiff. It is two bricks thick in the first story, * * * the foundation, however, projecting seventeen inches at its base under the surface of the defendants’ lot. * . * * The district judge, under article 680 [now 684] of the Code, allowed the plaintiff the value of one half of the wall and of nine inches of ground; and we think the defendants can be permitted to hold and use the wall on no other conditions. * * *
 

 “The evidence does not show the wall to have been a common one; but the projection of the foundation by the original owner, we do not think impairs the rights of the plaintiff for indemnity, for the use which the defendants have made of his land and wall, without agreement or condition.”
 

 In the two cases cited, and in Cordill v. Israel, 130 La. 138, 57 So. 778, 39 L. R. A. (N. S.) 931, it was held that the presumption stated in article 677 of the Civil Code, that a wall separating two buildings is presumed to be a wall “in common,” is not applicable to a wall adjoining a vacant lot. Besides, the presumption established by article 677 of the Code must yield to the proof in this ease that the dividing line between the property of Mrs. Olsen and that of Charles Tung is exactly in line with the outside surface of.the wall of Mrs. Olsen’s building.
 

 Tung relies mainly upon the plea that his building is not “actually supported” — in the language of article 679 of the Code — by the wall of Mrs. Olsen’s building. In other words, Tung contends that he has not converted Mrs. Olsen’s wall into a “wall in common,” and is not using it as such, because his building is not “actually supported by the wall” of her building. As we understand, all of the overhead joists, and hence the second and third floor and the roof, of Tung’s building are supported, on the side adjacent to the Olsen building, by five posts, twelve inches square, sixteen feet apart, standing in a row along the top of a reinforced concrete foundation, which was made for the purpose, on the base of Mrs. Olsen’s wall. In order to obtain an even bearing upon the foundation or base of her wall, a hole was cut entirely through the wall at each one of the five posts, and metal reinforcing rods or beams were inserted through the wall, across the top of the foundation or base, and extending through the new reinforced concrete foundation, which was poured over the projection of the old foundation and into the holes in the wall. The front wall and the rear wall of Tung’s building are joined to Mrs. Olsen’s wall, so that it is one of the four inclosing walls of Tung’s building; and the flashing, at the lower edge of the roof
 
 *771
 
 of Tung’s building, is attached to the wall of Mrs. Olsen’s building, to divert the rainwater from flowing down on Tung’s side of the wall, and to conduct it to the front or rear of the building. The foundation of Mrs. Olsen’s wall, therefore, supports as much of the weight of Tung’s building as if the ends of his floor joists were set into her wall and as if his roof rested upon the wall. The use which Tung is making of Mrs. Olsen’s wall, therefore, is the same as, if not more than, that which the S. Gumbel Realty & Securities Company made of the Canal-Villere Realty Company’s wall, in the case of Canal-Villere Realty Co. v. S. Gumble Realty & Securities Co., 1 La. App. 123 ; where the defendant was held indebted to the plaintiff for half of the value of the wall, and this court refused to grant a writ of review, on the ground that the judgment was correct. The rule stated in that case is that one who builds on a lot adjoining a wall which he has not contributed to the construction of, and which therefore belongs entirely to his neighbor, must pay the neighbor half of the value of the wall, for making it a wall in common, if he makes any use at all of the neighbor’s wall; and that it is not necessary that one who builds on a lot adjacent to a neighbor’s wall shall make all of the use of the wall that article 680 of the Civil Code allows him to make, in order to render himself liable to the neighbor for half of the value of the wall. The decision rendered in the Canal-Villere Realty Company Case is founded upon, and supported by, the opinions of the French commentators on article 656 of the Code Civil, of which article 679 of the Louisiana Code is a literal translation. The article provides that either one of the coproprietors of a wall in common (mur mitoyen) may exempt himself from the obligation to contribute to the repairing or rebuilding of the wall, by abandoning his right of common ownership (mitoyenneté), provided that the wall in common does not support a building belonging to him. The French commentators all agree that, in the proviso, that the wall in common does not support a building belonging to him who wishes to abandon his interest in the wall, the word “support” Has a very broad meaning, and, hence, that a co-proprietor of a wall in common cannot exempt himself from contributing to the repairing and rebuilding of the wall, by abandoning his interest in it, if he retains any benefit or use whatever of the wall. Laurent, vol. 7, p. 629, says:
 

 “It would be the same, if he who wishes to abandon the party wall derives any benefit from it whatever; he can make use of it only if the wall is common; there is therefore inconsistency in using the wall and abandoning the common interest in it. Article 656, it it true, speaks only of the case where the wall supports a building, but it is not restrictive ; it is the application of a principle, and the principle is naturally applicable to all analogous cases.”
 

 Fuzier-Herman, Code Civil Annote, vol. 1, p. 908, says the same thing, thus:
 

 “It is held that the exception made in article 656, to the rule which it lays down, for the case where the wall supports a building belonging to an adjacent proprietor, is not limited ; it must be extended to all cases where there is an act or deed on the part of the neighbor, adapting the wall to his own use.”
 

 Sirey, Codes Annote, vol. 1, p. 635, states a ease like the one before us, viz.:
 

 
 *773
 
 “Thus, the faculty [privilege] of abandoning cannot be exercised by the eoproprietor of the wall, who uses the wall for a foundation wall, although his building be only in juxtaposition to the wall, in which he has not imbedded any works.”
 

 The only difference between that case and this is that in this case the proprietor of the new building has imbedded a part of the new construction in the foundation of his neighbor’s wall. On this point, see also Dalloz, Codes Annotes, art. 656, vol. 1, p. 475.
 

 The French authors agree that a coproprietor of a “wall in common” may abandon it and at the same time retain any benefit or advantage that is merely a natural or necessary consequence or incident of the proximity of the wall, provided the benefit or advantage is not the result of any act on his part. But the use and-advantage which Tung has of Mrs. Olsen’s wall is the result of his resting the posts supporting the roof and floors of his building upon the foundation of her wall, and tying the ends and roof of his building to her wall. He is not allowed to have that use or advantage of a neighbor’s wall without having also the responsibilities which the law imposes upon a coproprietor of a wall in common. The judgment complained of, in that respect, is correct.
 

 The judge who tried this case fixed the value of the wall at the average of the estimates made by the architects, some of whom testified for the plaintiff and some for the defendant, and all of whom were equally reliable. The attorneys for the defendant argue that, if he is liable for having used the plaintiff’s wall, his liability is not for half of the value of the wall, but is limited to half of the original cost of the wall, less a reasonable depreciation for its age. The argument is based upon article 676 of the Civil Code, which provides that, if the owner of a lot beside which a neighbor builds a wall contributes half of the
 
 cost of constructing
 
 the wall, “then this wall is a wall in common between the proprietors,” and which article provides further that, if the owner of the adjacent lot, in such case, has refused to contribute to the construction of the wall, he may afterwards make it a “wall in common,” by paying to its owner half of the
 
 cost of construction.
 
 Article 684 provides that the owner of a lot adjoining another person’s wall has the right to make it a “wall in common” by paying to the owner one-half of its
 
 value,
 
 plus half of the value of the land on which the wall is built if it is entirely on the land of its owner. The reason for the provision for paying half of the value of the land on which the wall rests, if it is entirely on the land of the owner of the wall, is. that article 675 of the Code allows one who builds a wall adjacent to vacant land belonging to some one else to place the center of the wall on the dividing line, so that half of the thickness of the wall will be on the neighbor’s land, provided the thickness of the wall does not exceed eighteen inches, not including plastering, which shall not be more than three inches thick. The proviso in article 684 is incorrectly translated from the French text of the corresponding article (680) of the Code of 1825, so as to read: “if the person who has built the wall has laid the foundation entirely upon his own estate.” The French text reads: “si celui qui a fait le mur l’a fait porter entierement sur son heritage,” meaning: “if he who has built the wall has made it to rest entirely on his own estate.” The error in the
 
 *775
 
 translation was observed in Murrell v. Fowler, 3 La. Ann. 166, and in Heine v. Merrick, 41 La. Ann. 195, 204, 5 So. 760, 765, 6 So. 637, and in Lotz v. Hurwitz, 174 La. 638, 649, 141 So. 83, 87. In Heine v. Merrick, it was said, referring to Murrell v. Fowler: “That proviso has already been characterized as an obvious mistranslation of article 661 of the French Code, which it was intended to reproduce.” But that was a mistake, because there is no such proviso in article 661 of the French Code, and no reason why there should be any such proviso in the French Code, because there is no provision in the French Code, as there is in article 675 (originally 671) of the Louisiana Code, allowing the landowner who first builds to rest half of his wall on his neighbor’s land. All of this discussion, however, is important only in so far as it relates to the apparent conflict between article 676 of the Code, requiring reimbursement of half of the
 
 cost of construction,
 
 and article 684, requiring payment of half of the
 
 value
 
 of the wall. The plaintiff in this case is not asserting her claim for half of the value of the eighteen-inch strip of land on which the wall rests. The apparent conflict between articles 676 and 684 of the Civil Code has been reconciled by the rulings in the following cases, maintaining that it is only where the party desiring to make his neighbor’s wall a “wall in common” has refused to contribute to the construction of the wall, that he must pay half of the original cost of construction, viz.: Graihle v. Hown, 1 La. Ann. 140; Davis v. Grailhe, 14 La. Ann. 338; Auch v. Labouisse, 20 La. Ann. 553; Marion v. Johnson, 23 La. Ann. 598; Board of Administrators of Tulane Education Fund v. Israel, 132 La. 676, 61 So. 734; and Augustin v. Farnsworth, 155 La. 1053, 99 So. 868. In those cases, it was held that, where the party desiring to convert his neighbor’s wall into a party wall, or “wall in common,” had not refused to contribute to its" original construction, or where no demand had been made upon him for contribution, his obligation, for after-wards making the wall a party wall, was to pay only half of the value of the wall. It seems to have been assumed, in those cases, that any wall, on account of age and depreciation, would be worth less than the
 
 cost
 
 of construction. But in Florance v. Maillot, 22 La. Ann. 114, and in Fitzgerald v. Katzenstein & Wiener, 5 La. App. 28, where this court refused a writ of review on the ground that the judgment was correct, it was held, where a replacement of the wall would cost more than the original construction cost, that the party who made the wall a party wall, and who had not refused to contribute to the cost of original construction, had to pay only half of the original cost of construction of the wall. Our conclusion from all of these decisions is that a party who converts his neighbor’s wall into a “wall in common” must pay half of the replacement value, or present value, of the wall, unless he contends that, not having refused to contribute to the original cost of construction, he prefers to pay half of the original cost of construction, and, in that event, the burden of proof is on him to show what was the original cost of. construction. That, of course, was impossible in this case.
 

 The judgment is affirmed.
 

 ST. PAUL, J., absent.