The opinion of the court was delivered by
Breaux, J.
Plaintiff brought this action, accompanied with an injunction, for the abatement of an alleged nuisance. He is the owner of the premises situated just below defendant’s livery stable, *1118 on which, premises he resides and conducts a grocery store and liquor saloon. His complaint is that the defendant owns and conducts a stable on his, defendants, property with its front along the sidewalk and its lower side built of boards between which there are cracks through which the water, when the horses and wagons are washed, splashes on his lot. He also complains in his petition of the noisome odor coming from plaintiff’s stalls, the swarm of flies drawn thereby,, and the interminable stamping of the horses and mules which destroys comfort and prevents sleep.
The defendant is a member of the firm of Dreyfous & Co., carrying on a large retail dry goods business on Canal street. The horses and mules, about nine in number, necessary in delivering their goods are kept at this stable. The wagons are also stabled here. Defendant gives his personal attention to the management of the stable and goes there two or three times a day, even going at night some times.
The front part of the property is used as a stable in which the horses, mules, etc., are kept, and in the rear is a' place where the head stable man sleeps. There are a well and a cisitern on the premises.' The well is in the rear of the front building and the cistern is between it and the building. The water in the well is used only for the purpose of washing the horses and mules, etc. It was also used, years ago, to water plaintiffs plants and to do some washing for him. On account of a disagreement between him and the defendant, or, perhaps only because the pipe from 'the well to his lot was broken, he discontinued the use of the well for the purposes mentioned.
The evidence for the plaintiff sets out that the odor from the stable is, at times, offensive, particularly in the morning; that the stable and lot are not sufficiently drained and that the flies are numerous. There was something said by one of the witnesses about the stamping of the animals, and something was also said by witnesses about the water thrown against the side of the wall from the inside splashing through it on to plaintiff’s lot. The defendant met this evidence by calling a number of witnesses to the stand, who testified to a different condition of things at and about his stable. His witnesses testified that his stalls were well and cleanly kept, that the well water was not offensive at all. The testimony disclosed that other places in the vicinity were not in a healthy condition. On the lot adjoining the defendant’s stable, the house is occupied by a man who keej)s organs for rent, against whom complaint has frequently been made. It *1119 appears that those who gather there are disreputable and unclean, and the condition of the house is, in every way (so said one of the' witnesses), horrible; that the filthy occupants made no attempt at cleaning anything, the result being that the place is loathsome in the extreme;. that there are several colored barrooms, dives, and other places in the neighborhood, where negro roustabouts congregate and live, often without the least regard for sanitation or comfort; that in fact, the residence of plaintiff, and two or three other buildings near by are the only ones kept fairly clean.
The judgment in the lower court was against plaintiff, rejecting his demand and dismissing his injunction. The plaintiff prosecutes this appeal.
In our judgment, the defendant sought to maintain proper cleanliness, the well and the other appurtenances to the stable not by any means being offensive, as alleged. The water in the well is in -about the same condition as that in all other ordinary wells. The stable is kept as such places are ordinarily kept. It doubtless attracts flies, and may at times, generate offensive gases, but it does not attract all the flies, nor generate all the offensive odors in the vicinity. The plaintiff himself testifies that there are flies everywhere, creating the impression that the stable is not particularly objectionable in that respect.. But we do think that it requires even more of the attention of the owner than heretofore given i-t by him to prevent this stable from becoming a nuisance. The purpose of plaintiff is to prevent the defendant from occupying the place as a stable, at all. In this he must fail. Stable keeping being a legitimate occupation, may be regulated; it cannot be suppressed as a nuisance per se. In order to sustain his action in its entirety, plaintiff insists that the part of the ordinance requiring brick walls without openings where the sides of a stable are along a public street (or that, stables he placed within five feet of the sidewalk), is still in force. In answer to this position we can only say the decisions in State vs. Mahner, 43 Ann., 496, and State vs. Kuntz, 47 Ann., 106, may well give rise to a different impression. An extract from the last cited decision reads as follows: “On the ground announced in those opinions, we hold the ordinance involved here to be void.” (Italics ours.) If, in the face of the foregoing, there remains any force in the ordinance, we think that it, the ordinance, may well be taken as illegal, because unreasonable.
*1120 The chief cause of complaint is that for the number of animals kept in this stable, the small openings between the planks of defendant’s stable near the ground, and an opening in the rear of the building in which the horses are kept, do not give sufficient ventilation. A brick wall, without openings, for which plaintiff contends, would only serve to decrease the facilities for ventilation. And as to the distance of five feet from the sidewalk, if plaintiff were to succeed in shortening defendant’s stable to that extent, it would not add to his comfort in any way and would only result in preventing the use of a building in the face of a certificate in evidence from the city engineer’s office, attesting that the owner has complied with the “grades, specifications and plans of Ordinance No. 6,533, adopted July 5th, 1892,” and in the face of a permit from the Board of Health to build as authorized by the building permit, both dated July, 1898.
For several years previous to the purchase of this building by the defendant, it had been used as a stable. In view of the length of time it has been in usé without complaint, we think that only positive testimony that it has been a nuisance would justify a judgment decreeing that it be closed as a stable, simply because it did not stand five feet from the sidewalk, or, because it had no front wall without openings.
Counsel for plaintiff truly says in his brief that stables remain under the special police supervision. The testimony in this case shows that the cleanliness in this stable and the manner in which it is kept has the approval of this supervision and this approval is sustained by the testimony of a number of witnesses.
The ordinance in force upon the subject of stables requires that it should be kept clean and wholesome by removal of offal, urine, and other offensive matters and by suitably cleaning it as often as may be necessary under the regulations and rules established by the Board of Health. As relates to the foregoing requirements, the preponderance of the evidence shows that the defendant complied with the ordinance. As relates to- the ventilation and the dividing wall between the plaintiff and the defendant, the testimony is not conclusive. We are inclined to think, after having read the testimony carefully, that there is not enough ventilation in this stable, as well as in other houses in the vicinity. With reference to the other houses in the vicinity, the question is not before us for decision, but after having considered the testimony, we are constrained to say, that as relates to cleanliness, *1121 some of these houses are in a "wretched condition, suggestive oí gloomy, sombre, narrow and slummy streets. Horrescimus referens. The condition of this neighborhood has, doubtless, received police attention before now, as it must have been brought to the attention of the authorities during' the course of the trial.
Returning to the question of ventilation of defendant’s stable, and the splashing of the water, we have no doubt but that they can be remedied. We feel no hesitation in stating that, as relates to the free circulation of air in houses where animals are kept, an appeal for the proper enforcement of the ordinances, regulations, or customs on the subject is remedy enough. - In enforcing such ordinances, it would follow that division walls of brick or lumber would prove sufficient protection. C. C., 669. That'will result in requiring that the building be^suffieiently ventilated and that the cracks in the wall below between plaintiff and defendant be closed.
We reiterate the following as bearing upon the isues here; “to with- “ in reasonable limits, the individual citizen has to submit to some an- “ noyanee and inconvenience from the legal exercise of the rights, of “ others, and would only hold defendant responsible on strict proof of “ a clear disregard by the defendant in injunction of those obligations “ which Article 669 C. C. declares citizens owe to each other under the “laws, independently of all agreement.” State ex rel. Violett et al. vs. Judge, 46 Ann. 85.
It is therefore ordered, adjudged and decreed that the judgment is affirmed as relates to-the plaintiff’s complaint of violation of an ordinance requiring a brick wall to be built, or curtailing the length of the building, so that it- be removed five feet from the sidewalk, and, also, in all other respects except as relates to the dividing wall- between plaintiff’s property and the defendant’s stable, which should be closed to a sufficient extent.in height to restrain odors, as far--as possible, and also the splashing of water.
It is further ordered, adjudged and decreed that the judgment be reversed and the injunction reinstated in so far as relates to the necessity of making a sufficient wall and sufficient openings for ventilation. It is therefore ordered, adjudged and decreed that to that extent, i. e. wall and ventilation, the judgment is reversed and the injunction reinstated and the case remanded to the lower court for further proceedings according to law. The defendant to pay costs of appeal.