THOMPSON, J.
 

 In 1921 the defendant acquired from Hardy Sanders the privilege of mining and removing sand and gravel from gravel beds situated on Sanders’ property along Tangipahoa river.
 

 In order to transport the sand and gravel, it became necessary to construct a tramroad or spur track from said gravel beds to a connection with the Illinois Central Railway. In October, of that year, the mayor and board of aldermen of the town of Amite granted the defendant the privilege of constructing and operating his tramway through said town and across Duncan avenue.
 

 It may be stated that the Illinois Central railroad is- west of the town, and the gravel pits are on the east some 3,600 feet from Duncan avenue.
 

 The town authorities, for a stated consideration, also agreed to furnish the defendant with sufficient electric current to operate his machinery at the gravel beds, and for this purpose the town planted the necessary poles, and strung the wires along south of the tram-road from the power house to the gravel pits.
 

 The tramroad was constructed in the spring of 1922, and the first gravel was moved. over the road in July of that year.
 

 The plaintiff and defendant own adjoining lots, fronting east on Duncan avenue, which is the principal residential street of the town, but the residences on both lots are situated in the rear of the lots on the west.
 

 The tramroad crosses Duncan avenue between the plaintiff’s property and that of defendant, but the track is laid wholly on the defendant’s property. The nearest approach of the road to the plaintiff’s property is some five or six feet, and this is at the corner of plaintiff’s property on the avenue. From that point, the track diverges northwest, leaving the plaintiff’s residence some 53 feet to the south.
 

 This suit was filed April 12, 1923, and its purpose is to compel the defendant to remove the electric wires and to take up the railway track and place it further north on defendant’s property.
 

 A demand is also made for $2,500 damage suffered by plaintiff on account of personal inconvenience, discomfort, and mental suffering, all as a result of the building and operating of the said tramway near' plaintiff’s property.
 

 In case it should be held that the plaintiff is not entitled to have said road moved, then the plaintiff prays for judgment for $3,000 for depreciation in value of his property by reason of the close proximity of said tramway.
 

 The trial below resulted in the rejection of plaintiff’s demand, and he has appealed.
 

 It is alleged that the operation of the railroad in such close proximity to petitioner’s residence is in violation of petitioner’s rights, and amounts to a nuisance, in that it causes noise, vibration, smoke, cinders, and dirt to such a degree as to produce great personal discomfort to petitioner, the members of his family, and visitors; that the locomotive emits sparks of fire, which can endanger plaintiff’s residence; that it is frequently necessary, even during the warm summer months, to close all doors and windows on the north side of the house, to the great “annoyance, inconvenience, damage, .and injury to petitioner.”
 

 It is further alleged that in addition to the physical discomfort from the operation of said railroad, the location of same destroys the appearance of petitioner’s said property, making it ugl3r, unsightly, and unattractive.
 

 It is further alleged that the electric wires along said railroad constitute a nuisance, in that the same are dangerous, increase fire
 
 *17
 
 and lightning hazard, and are liable to fall and do serious injury to persons and property on petitioner’s said land.
 

 The plaintiff and his wife, together with four daughters and one son, all testified, with but little variation:
 

 That the trains, caused a great deal of noise, smoke, and a considerable vibration. That the noise consisted of whistling, rumbling, and chugging.
 

 That any one carrying on a conversation when one of the trains came along would' have to stop until it passed. That the smoke and cinders soiled and blackened almost everything about the house. One of the married daughters, who lived with plaintiff, testified that it was impossible to keep her eleven months old boy clean, and that the noise of the train disturbed her rest at night and caused her baby to give her an extra amount of work.
 

 A colored girl servant testified that the smoke and cinders from the train often soiled the clothes so that they would have to be washed over again.
 

 Mrs. Morris, plaintiff’s wife, was a sufferer from high blood pressure, and in October, 1922, after the road had been in operation for several months, had a stroke of apoplexy.
 

 That thereafter she was in a nervous condition and confined to her home.
 

 Her attending -physician testified that it was necessary that she should have complete rest, and that in his opinion, the noise caused by the railroad had a bad effect on her health, as it made her more nervous and raised her temper.
 

 A number of plaintiff’s neighbors testified that the plaintiff’s property had depreciated in value, and some of them went so far as to say that they would not purchase the property at any price.
 

 The residence on defendant’s property, formerly belonging to the Yinings, is much closer to the track than the plaintiff’s-residence. The Vinings occupied this property aftef the track ■ was built, and the two testified that they were not disturbed or annoyed by the noise or smoke and cinders, and no member of the family had ever complained of the operation of the train.
 

 Wetzel, defendant’s manager, testified that he had been living in the Vining property for about a month, and had not suffered any annoyance or inconvenience on account of noise, smoke, or cinders from the trains.
 

 G. W. Robbins lives about 60 feet from the railroad, and testified that he did not suffer any inconvenience from the operation of the trains.
 

 To the' same effect is the testimony'of H. A. Sanders, a brother of Mrs. Morris, who-lives 118 feet from the railroad.
 

 The town council, some time after the road began operations," passed an ordinance prohibiting the running of trains except during the day, that is to say, from 6 o’clock in the morning till 7 o’clock in the evening. Therefore, for quite a while before this suit was filed, there were no trains operating at night.
 

 It is shown that the trains were operated slowly, and that the engine in use at the time this suit was filed was equipped with a spark arrester. -
 

 A flagman was kept at the street crossing, and the trains were otherwise operated with care and caution, so as to cause as little inconvenience as possible.
 

 However, taking the testimony as a whole, we are of the opinion that the plaintiff has suffered some discomfort and inconvenience due to the causes alleged in the petition.
 

 The question to be decided is, therefore, whether the acts complained of constitute a nuisance to such an extent as to entitle the plaintiff to have the track removed and to recover the damages claimed.
 

 It is to be observed that the track is located wholly on defendant’s property. The busi
 
 *19
 
 ness is a lawful one, and there is no complaint that the trains were improperly-equipped, or carelessly and negligently operated.
 

 Article 668 of the Civil Code declares that, although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
 

 In Crump v. Carnahan, 155 La. 650, 99 So. 493, this court said: .
 

 ' “There can be no doubt of the soundness of the rule that every person is required to use his own property and to conduct his business in such a manner as not to cause undue annoyance, disturbance and discomfort to his neighbors, nor to impair the reasonable enjoyment of his neighbor's home.
 

 “On the other hand, it is said that the consensus of the better judicial thought is that an occupation or business lawfully located and followed is never, per se, a nuisance, so that such an occupation is not to be denounced as a nuisance, except to the extent that it is a nuisance.”
 

 Citing Froelicher v. Southern Marine Works, 118 La. 1084, 43 So. 882.
 

 In the case of Lewis v. Behan, 28 La. Ann. 130, the court said:
 

 “The defendants are in pursuit of a lawful business and the evidence does not show anything to warrant the conclusion that they are not conducting it properly and with a due regard to the police regulations of the city.
 

 “The smoke and noise may disturb the plaintiffs, but it is an inconvenience from which, under the provisions of article 669 of the Revised Code, they cannot be relieved.”
 

 In Le Blanc v. Ice Mfg. Co., 121 La. 250, 46 So. 226, 17 L. R. A. (N. S.) 287, the plaintiff sued to abate an ice factory as a nuisance and to recover damages.
 

 The plaintiff’s demand was rejected, the court holding that:
 

 “Unavoidable noises resulting from the operation of an ice plant, constructed under a municipal permit, furnish no basis for enjoining its operation as creating a private nuisance.”
 

 See, also, Hill v. Chicago, St. Louis, etc., R., 38 La. Ann. 599; Werges v. St. Louis, Chicago & N. O. R. R., 35 La. Ann. 641.
 

 In the Ilill Case, the court said:
 

 . “In absence of any allegation or proof that defendant’s railroad is improperly constructed or conducted, or uses defective machinery, or, in any way, occasions injury not incident to the prudent and lawful exercise of its right, plaintiff is not entitled to the injunction or damages claimed.”
 

 We have examined the authorities cited on behalf of plaintiff, and do not find them opposed in principle to the cases herein quoted.
 

 In the case of Kuhl v. St. Bernard Fertilizing Co., 117 La. 86, 41 So. 361, a tram railway was condemned as a nuisance, and ordered removed. The track there was used to transfer dead animals to the defendant’s factory, and the court found as a fact that the business, as conducted, was exceedingly offensive, both to sight and smell, and that at or after a certain hour in the evening the surrounding atmosphere was surcharged with an insufferable stench.
 

 In the case of Perrin v. Crescent City Stock & Slaughterhouse Co., 119 La. 84, 43 So. 938, 12 Ann. Cas. 903, the court found that the odors from the fertilizer plant were the legitimate cause of the nuisance, and, while such odors were not unbearable, they were a source of great discomfort to the plaintiff and his family, and to the residents of the neighborhood.
 

 In Long v. Louisiana Creosoting Co., 137 La. 862, 69 So. 281, the defendant owned and operated a creosoting plant on a creek about a mile and a half above plaintiff’s farm, and allowed creosoting oil or fluid to escape and flow into the creek. The court affirmed a judgment in plaintiff’s favor for $200 damages to his farm. The case clearly has no application here.
 

 In Orton v. Virginia-Carolina Chemical Co., 142 La. 792, 77 So. 632, the plaintiff claimed damages for the death of some cows and for
 
 *21
 
 the loss of value of others, and for the forced abandonment of his dairy, which was occasioned by the defendant’s wrongfully permitting poisonous gases to escape into the air over plaintiff’s premises, and poisonous acid to escape into a drain emptying into a bayou running through plaintiff’s premises, which furnished the water for his cattle. The court increased the damages to $2,000 for the death of several cows and injury to others as a direct result of the poisonous gases and acid, which defendant company had permitted to escape into and over plaintiff’s premises. The case bears no analogy to the instant case.
 

 The judgment appealed from is correct, and is affirmed.