ODOM, Justice.
 

 Plaintiff owns a residence in Opelousas, which she has occupied as a dwelling for about fifteen years. In April, 1933, defendant purchased an adjoining vacant lot and built thereon an ice and cold storage plant costing between $25,000 'and $30,000. The plant was completed in the latter part of June, and on July 4th the company opened the plant and began to manufacture ice. On the following day, July 5th, plaintiff .brought the present suit, alleging that, although the ice plant was not a nuisance per se, yet, “through the method of operating the same and motor power used, has become and will continue to be and become an unbearable nuisance to your petitioner, has destroyed your petitioner’s property value as a residence, making it impossible for her to dispose of same except at a great sacrifice for residential purposes; is destroying the peace, tranquillity and enjoyment of her said residence by petitioner, which is located in an exclusively residential neighborhood and is impairing and will continue to impair and seriously affect your petitioner’s state of health and state of mind, all to the great injury and damage to your petitioner and her said property.”
 

 She alleges that defendant has installed in its plant an internal combustion or crude oil engine which rests upon a surface foundation of concrete which has its exhaust on the side of the plant nearest to her residence, said engine being about 70 feet therefrom; that, when said plant is in operation, the excessive vibrations from the engine cause every portion of her residence to shake, windows, furniture, mantels, walls, and articles, such as dishes on tables, to rattle; that the noise from the exhaust (which she alleges is muffled down as low as possible) is of such a violent and disturbing nature as to make an ordinary conversation or sleep almost impossible.
 

 She alleges further that, due to the excessive vibrations, her residence has been materially damaged to the extent of $500 already, and that, whereas it was worth $2,500 prior to the erection of the plant, she would now have difficulty in obtaining $1,000 for the place “as a residence”; that she is entitled to $3,000 for the “shocks to her nervous system and the humiliation which she has suffered since the commencement of the erection of said ice plant.”
 

 She prayed for damages in the sum of $5,-000 and that the defendant be “forever enjoined and prohibited from operating said ice and cold storage plant in the manner in which it is now being operated.”
 

 In the trial court there was judgment for plaintiff for damages in the sum of $500 and enjoining defendant from operating its engine between the hours of 6 o’clock p. m. and 7 o’clock a. m. Defendant appealed. Plaintiff answered the appeal, praying that, in case this court should dissolve the injunction, the amount of damage be increased to $2,000.
 

 It is conceded that an ice plant is not a nuisance per se. But it is contended that this one is and will continue to be such on account of the manner in which it is operated. Plaintiff says that the noise from the engine, the exhaust, which is on the side of the plant nearest to her residence, is excessive and so
 
 *1042
 
 loud and constant that it is impossible for her to sleep at night or to carry on ordinary conversation in any part of her residence, and that the vibrations caused 'by the engine, when in operation, are violent and excessive to the extent of materially damaging her residence, causing the foundations and floors to give way, the doors to sag, and the wall paper to split and fall away from the walls. She further says that the vibrations cause discomfort to herself and guests.
 

 The block in which plaintiff’s residence is located is bounded on the south by Vine street, east by Liberty street, north by Landry street, and west by Railroad avenue. Her residence faces south on Vine. Defendant’s plant is in the southwest corner of the block, fronting also on Vine street; its lot being adjacent to plaintiff’s. While it is alleged by plaintiff that the east edge of defendant’s building is about 70 feet from the west side of her house, the testimony shows that the space between the two buildings is not more than 60 feet wide. The engine is in the east portion of the plant and the exhaust pipe is on that side, the side nearest to plaintiff’s residence. The engine, 100 horse power semi-Diesel in type, with two cylinders, burns crude oil as fuel. It has been in use some four years, but is in good condition. It has for its foundation a' concrete block 18 feet long, 8 feet wide, and 8 feet thick. While in operation, it produces the usual, but not an excessive, amount of noise. It causes vibrations which reach plaintiff’s residence. Both the noise and the vibrations are noticeable to those who inhabit the residence. But it- clearly appears that the noise and these vibrations are unavoidable, and are such as may be reasonably expected from a plant of this kind. They are not violent or excessive. Plaintiff alleged and testified as a witness that she could not sleep because of
 
 them,
 
 and that they are so excessive that it was almost impossible for two people to carry on ordinary conversation in any portion of her residence. A young man named De Jean testified that he occupied a room in the residence each night during three weeks since the plant has been in operation and that he found it difficult to sleep. His testimony corroborates that of plaintiff in every detail, both as to the noise and vibrations. Plaintiff called other witnesses who gave like testimony, except that they had not slept in the house.
 

 It is pertinent, we think, to say here that the young man who slept in the house and the other witnesses called by plaintiff to give evidence as to the noise and vibrations lived in a rural section of the parish some seven or eight miles from Opelousas, where plaintiff teaches school, and were, of course, not accustomed to such noises as are incident to trafile and the operation of machinery in towns and cities. Those who are privileged to dwell in rural sections enjoy a “sweet and tender silence,” rest and. a “high repose that ever lives upon the soul like sleep.” To them “silence is the law of being, sound, the breaking of the rule.” Not accustomed to the “roar of swarming cities,” noise to them is an intolerable nuisance. It is not proper, we think, to rest our conclusions as to whether this ice plant is a nuisance on account of the noise and slight vibrations necessarily resulting from its operation upon the testimony, of those who dwell in rural sections, not because they are less sincere, but rather because they are more .sensitive to them. It is quite noticeable that all those witnesses who live in
 
 *1044
 
 rural sections were much disturbed, while those who live in Opelousas paid but little, if any, attention to either the noise or the vibrations.
 

 Plaintiff is a lady of education and refinement and to a degree sentimental. To her, this house which she owns is a home to which she has a right to resort for rest and repose. She would much prefer,- oí course, that the ice plant was located elsewhere. Others who testified, some for the defendant, said that, if they owned the house, they would not welcome the establishment of such a plant so near by. But each one of them who lived in Opelousas said that, while the noise and vibrations were noticeable and somewhat objectionable to them at first, yet they became accustomed to them within a few days, paid no further attention to them, never being disturbed by them. There are some six or seven other residences located in the same block, one built on a lot to the rear of and adjacent to, the plant. This residence is about 70 feet from the engine and exhaust pipe. Mr. Evans and his wife, who live in this house, were -both called as witnesses. They testified that they were not disturbed. Mr. Evans is chief engineer for the defendant’s plant, and for that reason it is suggested that he and his wife may be biased. Possibly so, but those who occupy a house just across the street and directly in front of the factory gave similar testimony. A man who owns four tenant houses in the same block said that each of them was occupied, and up to the time of the trial he had had no complaints from any of his tenants. He said one of his houses became vacant after the plant started operations and that another tenant took it immediately. There are residences in the block across Vine street from the one in which plaintiff’s is located, one used as a boarding house. Plaintiff did not call any of her neighbors to corroborate her testimony. Pefendant called some of them, and those it called said that they were not disturbed.
 

 Plaintiff claimed $3,000 damage for injury to her health. She said she had consulted two physicians. But these were not called as witnesses. There is no testimony at all to show that plaintiff’s health was injured on account of the noise.
 

 The testimony leaves us in no doubt that the mere presence of this plant, located as it is on a lot adjacent to plaintiff’s residence, is objectionable' to her, nor do wo doubt that the noise and vibrations resulting from the operation of the plant are noticeable. But we think plaintiff, like those of her neighbors who came to court, will soon become accustomed to, and pay no attention to, them, if she wills to do so. The vibra-' tions are only slight, and were not noticed by many of plaintiff’s witnesses until their attention was called to them. Some of her witnesses and some of those called by defendant said that by placing the hand against the walls or a windowpane a slight vibration or tremor was felt, but not otherwise.
 

 The noise is not great, nor excessive. Noise alone or noise accompanied by vibrations may create a nuisance subject of an action for damage or injunction, even though it arises from the carrying on of a trade or business lawful in its nature. But, to have this effect, the noise must be excessive, unreasonable in degree, and of such character as to produce actual, physical discomfort and annoyance to a person of ordinary sensibilities. As was
 
 *1046
 
 said in Froelicher v. Ironworks, 111 La. 705, 35 So. 821, 823, 64 L. R. A. 228, the “injury must be real, and not fanciful.” In that case, where the facts were the same as those in Froelicher v. Southern Marine Works, 118 La. 1077, 43 So. 882, 883, the noises complained of by plaintiff resulted from the operation of ironworks and machine shops where boilers were repaired and where there was “caulking and riveting of iron, steel tanks, and boilers, the screeching and rumbling noise of the-gearing, the hammering of iron, steel, copper, and brass, the screeches of the emery wheel as the tools and pieces are sharpened, the vibrations caused by the heavy moving machinery,” etc.
 

 The court held that such noises were “excessive and tortious,” and therefore a nuisance. But the court took occasion to say at page 1086 of 118 La., 43 So. 882, 886:
 

 “We deem it also proper to state here that only downright discomfort is actionable. Small inconveniences do not recommend themselves as cause sufficient to close down an industry.”
 

 In LeBlanc v. Orleans Ice Mfg. Co., 121 La. 249, 46 So. 226, 227, 17 L. R. A. (N. S.) 287, the court said that the owner of an ice plant must take all proper precautions to prevent noise, smoke, etc., from becoming a nuisance to the neighbors, and to that end must comply with all requirements of police regulations, and, “this being done, unavoidable noise, smoke, etc., must be considered as an inconvenience to which the neighbors must submit for the public good. Of course, a city ordinance or permit cannot validate a nuisance. Blanc v. Murray, 36 La. Ann. 162 [51 Am. Rep. 7]. The noise of a factory is not a nuisance per se. City of New Orleans v. Lagasse, 114 La. 1055, 38 So. 828.”
 

 The court found in that case that the noise was slight and there were no vibrations. Here there is considerable noise and some vibration. But the principle there announced is applicable here.
 

 Defendant built its plant under a permit from the city authorities. Its machinery is all in good condition, and the operation of the plant occasions no more noise or vibration than necessarily results from the operation of any other plant of its kind, and, while this noise may be to some extent annoying to plaintiff, she must submit to it “for the public good”; it appearing that the noise is not unreasonable or excessive.
 

 “Mere noise may be a nuisance, if it be of such a character as to be productive of actual physical discomfort and annoyance to a person of ordinary sensibilities, although such noise may result from the carrying on of a trade or business in a town or city. But as many useful acts are necessarily attended with more or less noise, reasonable noises in an appropriate locality are not necessarily nuisances, even though they are disagreeable and annoying.”
 

 See “Noise,” 29 Cyc. 1185; 46 C. J. 683; 20 R. O. L. 445, § 60.
 

 In the recent ease of DiCarlo v. Laundry & Dry Cleaning Service, 178 La. 676, 152 So. 327, plaintiff sought damages resulting from an alleged nuisance. Relief was granted, and defendant was enjoined from operation of its plant, subject to certain conditions. But it was found by the court that the noises and vibrations were “excessive and abnormal”; that the engines were out of repair and “un
 
 *1048
 
 balanced”; that something was wrong with them, they .“pounded”; and that the noise and vibrations resulted from this condition of the machinery.
 

 Nothing of the kind was proved in the instant ease. The machinery is in good condition, and the noises are not excessive or abnormal. The question whether noises constitute a nuisance under the law is one of fact. Plaintiff has failed to prove to our satisfaction that the operation of defendant’s plant constitutes a nuisance, and for that reason her demand for damages and for an injunction on that ground must be dismissed.
 

 Plaintiff alleged in her petition, and the judge of the lower court said in his written opinion, that this ice plant was located in an exclusively residential section of the city. Some of the witnesses called by plaintiff said that, but we do not find it so. The undisputed facts are that there are some seven or eight business houses located along Railroad avenue, which forms the western boundary of the' block in which plaintiff’s residence and, the ice plant are located. A railroad runs within 100 feet of the ice plant, and just across the railroad within a short distance of plaintiff’s residence there is a cotton gin and rice mill, a sash and door factory, and other industries. The mayor testified that Railroad avenue is given over principally to commercial enterprises. He further testified that he considered the site selected by defendant a proper location for an ice plant. Several witnesses testified that, while there were no business houses located in that block on Vine or Liberty streets, yet there are in the block more business houses than residences.
 

 Plaintiff alleged and offered some testimony which tends to show that the vibrations have caused material damage to her house. She did not prove that to our satisfaction. At any rate, there is no testimony to show the amount of such damage, if any. We think, however, that, if the vibrations have or do cause material damage to her property, she has a cause of action to recover such damages, even though it is true that the operation of the ice plant is not a nuisance. In this respect, her claim should be dismissed as in case of nonsuit.
 

 For the reasons assigned, the judgment appealed from is set aside, the plaintiff’s demand for damages alleged to have resulted from the existence of a nuisance are rejected, and the injunction is dissolved. Plaintiff’s demand for material damages to her house because of alleged vibrations is dismissed as in case of nonsuit, all costs to be paid by appellee.