ROGERS, Justice.
 

 This is an appeal from the refusal of the trial judge to grant a preliminary injunction to abate an alleged nuisance.
 

 The defendant company is the owner and operator of an ice manufacturing plant situated at the corner of Chartres and Toulouse streets, in the square bounded by Royal and St. Louis streets, in the city of New Orleans. The ■ plaintiffs, thirteen in number, reside on Royal street, in the vicinity of defendant’s plant.
 

 Plaintiffs allege, in substance, that during the month of June, 1935, the defendant changed its power plant from steam, generated quietly in a brick building fronting Toulouse street, to high-speed internal combustion gas engines set up in a shed in the rear portion of its property, and installed other and larger noisy equipment, and permitted ammonia and gas fumes to escape' into plaintiffs’ premises. That the noises and vibrations “are unusual, excessive, disturbing and burdensome to such an .extent as to interfere with and substantially prevent the rest and sleep of each and- all of your petitioners, the said noise and vibrations being particularly disturbing and offensive during the hours of the night; that the aforesaid noises and vibrations interfere-with and prevent the rest and sleep o.f each and all of your petitioners to such an extent as to threaten the impairment of their health, unless the same be abated.” The petition charges that the enlargement and expansion of defendant’s plant was violative of the municipality’s Comprehensive Zoning Ordinance, which was made a part of the petition. Miss Irby further complained that the alleged nuisance impaired the value of her property in excess of $5,-' 000.
 

 The defendant company, after its exception of no cause of action was overruled, answered the petition, denying all the allegations, except as specially admitted. Defendant averred that the ice plant had been established at its present location since the year 1907. That the capacity of its plant when first installed and at the time of the passage of the zoning ordinance was 100 tons per day, and that since the installation of the new machinery referred to in the petition the capacity of the plant has- been reduced to 50 tons per day. Defendant specially denied that the internal combustion gas engines were set up in a rear she.d and averred that they were set up in the main building of its plant. ■ ■
 

 
 *1085
 
 The issues involve only questions of fact,, which the trial judge, after hearing a number of witnesses produced by the -parties,, resolved in favor of the defendant. After a close reading of the testimony, we are not prepared to hold that the trial judge erred in his findings.
 

 This appeal is by twelve of the thirteen original plaintiffs. Among the appellants are five married couples, the other appellants being Miss Irby and Mrs. L. W. Hutchinson, one of her tenants. Three of the married couples — Mr. and Mrs. Allen, Mr. and Mrs. Hutchinson, and Mr. and Mrs. Sherry — live on the lake side of Royal street, facing in the direction of defendant’s factory. The Allens and the Hutchinsons live in the block opposite the block in which the factory is situated, and the Sherrys live in the adjoining block towards Canal street. Mr. and Mrs. R. I. McClure, Miss Irby, her mother, Mrs. George D. Lilly, her stepfather, Dr. George D. Lilly, and her tenant, Mrs. L. W. Hutchinson, live in the same block with the factory, so that the rears of the McClure property and the Ir-by property are in close proximity to it. The record indicates that the Lillys and Miss Irby are the principal complainants against defendant’s plant, and that they are the real prosecutors of this suit.
 

 The evidence shows that the defendant purchased the ice plant in 1912 and has continuously operated it since July 15, 1913. From time to time, defendant has made needed changes in the machinery and equipment. For the purpose of more economical operation to meet sharp competition of its business rivals, defendant found it necessary to install two internal combustion engines in its plant. The engines which are of a semi-Deisel type, were placed in position in the early summer of 1933. They are mounted on large concrete foundations which, in turn, rest on a concrete slab three feet thick. When installed, the engines were equipped with standard size Maxim silencers. Shortly after their installation, Dr. Lilly complained about the noise, and the officers of the defendant company, not, as they contend, because their plant was making more noise than any other ice factory, but in an earnest endeavor to please the adjacent residents, equipped the engines with specially constructed Maxim silencers, two sizes larger than the standard size. At the same time there was erected on the side of the building where the engines are located a wall of double thickness with a five-inch dead air space in between composed of special sound absorption material.
 

 Miss Jane Irby, an emancipated minor, acquired her property by inheritance from her grandfather, William R. Irby, in 1933. The property is designated by the Nos. 516-524 Royal street and is situated in the Vieux Carre, or original French quarter of the city of New Orleans. Mr. Irby was patriotically interested in preserving that section of the city for its historical associations and as an attraction for tourists. He selected this property, known as the “old Soniat” or “Brulatour” property, among others, for rehabilitating and preserving. He purchased the property for $10,000, and spent between $60,000 and $70,000 in remodeling and renovating it for commercial establishments on the lower
 
 *1087
 
 floor and apartments on the upper floors. This was long after decendant’s plant was established and in operation. At the time the property was purchased it was being run as a cheap boarding house, and the rear portion, now occupied by Dr. and Mrs. Lilly, as an apartment, was used as a warehouse. In addition to containing shops fronting on Royal street, the lower portion of the property, in accordance with the request of Mr. Irby, is permitted to remain open daily for public inspection, several hundred persons a day inspecting the patio and visiting the art gallery, which is maintained in the rear. At Mardi Gras and on special occasions the number of daily visitors is considerably larger.
 

 The neighborhood is almost exclusively commercial in character. In fact, with certain specific exceptions, it is so described in the zoning ordinance. The buildings, generally, are old and dilapidated. The lower floors are occupied by numerous and varied commercial businesses. The upper floors are used for residential purposes. Also as “studios” for entertainment purposes by persons who reside elsewhere. In the immediate neighborhood of .the Irby and McClure homes and the defendant’s ice plant, is the large lumber yard of the Kross Lumber Company, which separates the rears of the Irby and McClure properties from the ice plant. This lumber yard, which opens on Toulouse street, also adjoins the Irby property on the side towards St. Louis street. Adjoining that is an automobile parking ground and gasoline station. Royal street, on which the Irby and McClure properties face, is a narrow street, with a car line in the center. Chartres street, which parallels the rears of the properties, is also a narrow street on which a bus line operates. Both streets, which are one-way thoroughfares, are subject to heavy traffic. Generally speaking, the neighborhood is an extremely noisy one, due to its various business establishments and its steady traffic.
 

 Taking up first plaintiffs’ charge that defendant’s plant is being operated in violation of the zoning laws, we find that the plant is located in the “H” or Vieux Carre district. The original zoning ordinance of the city of New Orleans was approved January 6, 1929. Section 7 of the ordinance provides that all buildings and premises located in the “H” or Vieux Carre district may be used for any purpose permitted in the commercial districts, with certain exceptions, among which are ice plants or ice storage houses of more than five-ton capacity per day of 24 hours. However, section-10 of the ordinance provides that the lawful use of all buildings existing at the time of the passage of the ordinance may be continued, except that the use shall not be expanded nor any structural alterations be made other than those required by law. On July 28, 1932, Ordinance No. 13,749 was adopted, in which a nonconforming use was defined as follows, viz.: “A building or portion thereof, or land or portion thereof, occupied by use that does not conform with the regulations of the use district in which it is situated.” And on July 28, 1932, Ordinance No. 13,746 was adopted, in which “structural alterations” were defined as: “Any change, except for repair and/or replacement, in the supporting members of the building, such as bearing walls, collumns, beams or girders.” There
 
 *1089
 
 fore, defendant’s plant, having a capacity in excess of five tons per day, could not he erected and operated as a new plant in its present location, but having been in existence and use at the time of the ordinance, may be continued for twenty years, the period specified in the ordinance.
 

 Plaintiffs argue that defendant has violated the zoning ordinance of the city by erecting a water tower on the roof of its building and by constructing concrete foundations for the support of the newly installed engines. But there is no testimony in the record showing that the water tower and concrete foundations constitute “expanded use” or “structural alterations” as defined by the ordinance. On the face of the record, we are unable to say that such is a fact.
 

 Plaintiffs also argue that defendant’s plant violates the regulations covering the “H” or Vieux Carre district, in which the ordinance, No. II of section 7, specially prohibits therein, “All uses excluded from the I, J and K industrial districts”; among the uses prohibited in those districts being, as set forth in No. 63 of section 8, “ * * * those uses which may be obnoxious or offensive by reason of emission of odor, dust, smoke, gas or noise or vibration.” But plaintiffs neither allege nor show that defendant’s plant is violative of the zoning ordinance for any of the causes stated.
 

 The trial judge was right, therefore, in refusing to hold that the manner in which the defendant is presently conducting its business constitutes a violation of the comprehensive zoning ordinance of the municipality.
 

 Taking up next plaintiff’s charge that defendant’s plant constitutes a nuisance, we find it is conceded that an ice plant is not a nuisance,per se. But plaintiffs contend that the faulty construction or negligent operation of defendant’s plant creates a nuisance against which they are entitled to injunctive relief.
 

 The testimony satisfies us that defendant’s plant is properly constructed. The building is adequate for the purpose for which it is used and the machinery is an approved type and properly installed: The testimony also satisfies us that defendant’s plant is efficiently operated and that it makes less noise than an ordinary ice factory of its kind and character.
 

 On the trial of the case, plaintiffs made no serious attempt to support their allegation that ammonia fumes and natural gas escaping from defendant’s plant entered their homes, causing them great annoyance and discomfort. They devoted their efforts mainly to showing that the noises and vibrations emanating from defendant’s plant were of such unusual, excessive, and disturbing nature as to create the nuisance of which they complained. Much testimony was adduced by the parties on this controverted point. While plaintiffs’ witnesses testified that defendant’s plant was noisy and annoying, many residents of the neighborhood took the stand in defendant’s behalf and testified that the plant was not noisy and did not disturb them at all.
 

 
 *1091
 
 After considering the testimony, the trial judge apparently reached the conclusion that the vibrations resulting from the operation of defendant’s plant were so slight as not to require any comment. He found that a certain amount of noise emanated from the plant, which could be heard in the rear apartment, but hardly at all in the front apartments, of the Irby home. He further found that the noise was not excessive and not such as warranted him in granting plaintiffs injunctive relief. Our reading of the record has not convinced us that the trial judge erred in his ruling.
 

 The locality, the occupation of the inhabitants of the neighborhood, the environment, is what determines whether an establishment which uses necessarily noisy machinery is a nuisance. A manufacturing enterprise that would be a nuisance in one locality might not be so in another. The inhabitants of large cities that are sustained by manufacturing and commercial enterprises must bear the unavoidable discomforts and annoyances thereof. Noises and vibrations from the operation of machinery cannot be a nuisance, subject to injunction, unless they are excessive and unreasonable, depending upon the location of the establishment, its relation to other property, and particularly to other sources of noise or vibration. Olsen v. Tung, 179 La. 760, 155 So. 16; Meyer v. Kemper Ice Co., 180 La. 1037, 158 So. 378.
 

 In the Meyer-Kemper Case, where the facts were not so favorable to the defendant as they are in this case, this court dissolved an injunction issued by the district court, at the instance of an adjoining property owner, enjoining the operation of defendant’s ice plant, the court holding that, where the noise from an ice plant was not unreasonable, a person living in adjoining property was not entitled to injunctive relief because of such noise, but must submit to it, even though it may be to some extent annoying.
 

 The section of the city in which plaintiffs reside is a populous one, abounding in noises and disturbances resulting from the heavy traffic to which it is subjected and the numerous businesses and pursuits which are properly located and conducted therein. Of necessity, plaintiffs must expect and submit to some annoyances from the various occupations and enterprises carried on in their immediate vicinity, which are necessary for the public trade and commerce and for the public at large. Living in such a neighborhood, plaintiffs cannot be heard to complain that an industrial plant is operated on adjoining property, if it is operated in a proper manner. Defendant’s plant is properly operated, and the noise and vibrations it produces are only those which are unavoidable, and such as may be reasonably expected to emanate from a plant of that character.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 O’NIELL, C. J., absent.