## TALBOT v. STILES.

### No. 5865.

Court of Appeal of Louisiana.
Second Circuit.

April 28, 1939.

470

McBride & Goff, of Ruston, for appellant.

E. E. Talbot, of New Orleans, for appellee.

## TALIAFERRO, Judge.

Defendant appealed from a judgment ordering the issuance of a preliminary injunction commanding him to abate a nuisance complained of by plaintiff. The nuisance complained of, so far as presented by this appeal, is the howling, barking, whining and yelping, particularly at night, of dogs kept on defendant's premises and in kennels thereon, brought there for observation and treatment, to such an extent and of such frequency as to disturb and interrupt the sleep and rest of plaintiff, his wife and tenants in his apartments.

The residence properties of the litigants adjoin and front easterly on Jones street in the town of Ruston, Louisiana.

Plaintiff's residence, a two story frame building, is 78 feet north of defendant's property line and 108 feet from the kennels referred to. His front porch is about on a line with the rear side of defendant's residence.

Plaintiff is a retired physician, 68 years old, and is somewhat sensitive to noises. Defendant is a young graduate Veterinary Surgeon. He has a very active practice. It extends over a radius of 150 miles. He is absent from home a large part of the time and frequently returns at early morning hours. Dogs in large numbers, mostly well bred, are brought to him for treatment. These ofttimes are kept under observation for a while before being administered to and thereafter detained to await developments. Kennels are used for detention purposes. The number of dogs detained varies from time to time. It is shown that on one occasion there were 15 housed in the kennels, and we are constrained to believe, as is alleged by plaintiff, "that the dogs so kept there, either from loneliness, sickness or inattention, or for no reason at all, bark, howl, growl, whine and yelp, night and day," intermittently, so noisily as to disturb plaintiff and his household in the manner and to the extent alleged by him.

Defendant established residence next to plaintiff's home about eighteen months before this suit was filed. Before doing so he made considerable inquiry of the authorities to know if there existed any law, rule or regulation to prohibit the establishment and conduct of the sort of business he is now engaged in, within the limits of the town of Ruston. Before he had enclosed his premises and erected the kennels, plaintiff, in a most friendly manner, counseled with him concerning the conduct of his business in his back yard in view of and so close to plaintiff's home and at that time offered to sell or give to him the free use of land farther removed on which to erect his office, kennels, etc., needful to the conduct of his business of veterinary surgeon but the proffer was refused.

Over the entire period of eighteen months the dogs have been the source of much discomfort and disturbance to plaintiff. Time and again he complained to defendant and his wife and on several occasions he sought the aid of the Police Department of Ruston. This department took the position that it had no jurisdiction in the matter, and, therefore, was reluctant to touch it. Before plaintiff made his first complaint to the police, a tenant of one of his apartments, being so disturbed in her sleep by the barking of these dogs, did so. Defendant was absent. A policeman found a fretting, howling dog tied to some object in the back yard and removed him.

We are convinced from the testimony that defendant's dog patients are more noisy when he is absent and, as said before, he is away quite often, perhaps daily, including a goodly portion of nights. Naturally, he has the ability to relieve their discomfort, suffering and restlessness when among them. He says that he has arranged with a boy who sleeps in his home to attend the dogs' needs when he is absent. The police found this boy dead asleep on their visits to the place, at plaintiff's request, and wholly unaffected by the din about him.

Defendant elicited some testimony tending to prove that the greater part of the noise, so disturbing to plaintiff, emanated from dogs owned by his many negro tenants west and south of his residence. We are not convinced of the truth of this. We rather incline to believe, in view of our own knowledge of the nature of these animals, that most probably the dogs of the tenants, out of curiosity, or a belligerent spirit, or through characteristic canine propensity, inciting them to roam,

were attracted to defendant's premises by the howls and barks of their imprisoned kinsmen; and, perhaps, in whole or part, joined them in nocturnal howling and barking.

Several of the litigants' neighbors testified that the noises from these dogs did not disturb them. All of these, with one exception, lived a block or more from the kennels. The excepted one lived across the street from defendant's home. He and his wife slept on a porch at the extreme east end of the home, which put the balance of the building, the yard, the street, defendant's front lawn and his residence between them and the kennels. In addition, the residence of this witness is on a lot sloping easterly from Jones street, the sleeping porch being on a level lower than defendant's kennels. It is but natural that, in view of these conditions, the nightly rest of this witness and his wife was not interrupted by the noises which bothered plaintiff.

Not one of these witnesses was even nearly situated with regard to the kennels, as is plaintiff. His bedroom faces the locus squarely and his front porch is in full view thereof.

Dr. Talbot has resolved that he or the dogs must move. He has evinced patience, reasonableness, and a commendable amicable attitude towards defendant throughout his unpleasant experience, and we agree with him in the position that he is entitled to relief from the nuisance complained of. The dogs should go rather than he.

Not only does the howling and barking of these dogs hard by materially disturb the rest and quietude of himself, his wife and apartment tenants at night, but from the very nature thereof, if it has not already done so, a continuance of it will materially affect the value of his home, reduce its desirableness as a residence and act as a deterrent to those who wish to lease apartments from him. In this way it is easy to see that the intrinsic value of his investment will be substantially affected.

A private nuisance is defined to be, "Anything done to the hurt or annoyance of the lands, tenements or hereditaments of another. It produces damages to but one or a few persons, and cannot be said to be public." Bouvier's Law Dictionary.

In Cunningham v. Wilmington Ice Mfg. Co., 2 W.W.Harr., 32 Del. 229, 121 A. 654, it is said that, "A 'nuisance' is anything from which results harm, inconvenience, or damage, or which materially interferes with the enjoyment of rights or property."

In City of New Orleans v. Lenfant, 126 La. 455, 52 So. 575, 29 L.R.A.,N. S., 642, the court having before it a criminal case falling under the provisions of a municipal ordinance denouncing certain acts as a nuisance, as is reflected from the syllabus, said, "A 'nuisance' is anything which incommodes, annoys, or produces inconvenience or damage. A 'nuisance per se' is one which is always a nuisance in certain localities. A 'nuisance in fact' is one which becomes a nuisance by reason of circumstances and surroundings."

We take the following from 79 A.L.R., page 1067, viz: "In some cases it has been held that the keeping of a dog or of dogs may be enjoined as a nuisance where, by reason of the barking, howling, or yelping of the animal or animals, residents on neighboring property are seriously annoyed and disturbed in the use and enjoyment thereof."

Perhaps a dozen cases from various states are cited to support what is here said.

In the leading case of Hechelman v. Kindt, 22 Pa.Dist.R. 791, 30 Pa.Co.Ct.R. 277, it is said: "It has been held that a pack of dogs may create a nuisance, and it follows that a constituent part of a pack, to wit, one dog, if sufficiently persistent, may make as much noise as a dozen barking seriatim, and while a court of equity should not be troubled with cat and dog cases, we are constrained to hold that a chancellor, in a proper case (and this is one), should decree that the owner of the dog should so care for it (him or her) that it should not bark and yelp except in cases of burglary or fire."

The Orleans Court of Appeal, in Marks v. Luce, 1 Orleans App. 107, considered an injunction issued to restrain a nuisance created by only one dog. Inter alia, it was therein said, "That the barking and howling of defendants dog constituted a nuisance, affecting persons of ordinary health and sensibilities as well as it did the plaintiff, is established beyond a doubt, and that defendant failed to abate the nuisance though repeatedly importuned so to do by plaintiff, is also established."

Defendant's counsel cite and rely upon the following cases: Dubos v. Dreyfous,

52 La.Ann. 1117, 27 So. 663; Meyer v. Kemper Ice Co., 180 La. 1037, 158 So. 378; Irby v. Panama Ice Co., 184 La. 1082, 168 So. 306; Morris v. Putsman, 166 La. 14, 116 So. 577, 57 A.L.R. 939.

Not one of these cases is analogous to that at bar. All involved efforts to abate a nuisance. The first case arose over the operation of a livery stable. The second, third and fourth involved alleged nuisances caused by the operation of stationary machinery. The last case reflects an effort on part of a land owner to stop the running of trains and cars over a tram-road near his property. In all these cases, the plaintiff failed. Without burdening this opinion with a detail discussion of the issues in each case, we will say that we are not out of harmony with what the courts therein held.

To require the removal of heavy and expensive machinery because its running disturbs a nearby property owner, and thereby destroy in a large measure invested capital and good-will, is a serious act. It should not be done, and is not done through the courts, except in rare cases.

In the present case, defendant's investment in kennels and accessories is not large. Their removal to a nearby site would involve a minimum of expense.

The sensibilities of a normal person will be more or less affected if he learns that a dog clinic or hospital is to be established so close to his residence that the surgical and other operations daily performed will be in full view thereof. This alone might not provide adequate cause for the abatement of such an institution, but when coupled with the aftermath, consisting of the howls, barks and yelping of dumb animals, to such an extent as appears in this case, there does arise sufficient cause for the equity side of the judiciary to extend a hand needful to suppress such conditions.

After discussing the merits of the case fully in brief, appellant's counsel take up and briefly argue an exception of no cause and no right of action filed in and overruled by the lower court. The petition, under this exception, is attacked on these grounds, viz:

1. That the prayer does not ask for an injunction against the noises complained of, but against defendant's profession.

2. That the condition complained of is not alleged to be permanent.

3. That it is not alleged that the noises complained of are excessive or unreasonable or of such character as to produce actual physical discomfort and annoyance to a person of ordinary sensibilities.

We think the exception without merit.

■ 1. Judgment is prayed against defendant, inter alia, "commanding him entirely to discontinue * * * maintaining and operating the aforesaid cat and dog kennels and to abate the nuisances fully described" in the petition.

It does not follow from these allegations that it is desired that defendant be enjoined from exercising his profession on his own premises if he can do so without creating the nuisance complained of. If he can effectively control and suppress the howling and barking of the dogs, plaintiff will have no good ground to complain. If this cannot be done, then it devolves upon defendant to remove his kennels to a new site and there practice his profession.

■ 2. The petition as a whole clearly discloses that it was the intention of the pleader to allege that the conditions complained of were not daily but of frequent occurrence; so frequent, night and day, as to produce the effects alleged. It is not necessary to the cause of action that it be alleged that the disturbing noises from the dogs be of a continuous nature. They may be intermittent and still be productive of the evils inveighed against. It is certain, from the allegations, that unless injunctive relief is granted the nuisance will not abate, but will probably increase in intensity as time goes on. Defendant's practice will, in all probability, increase in volume.

■ 3. As regards the allegations relative to the excessive and unreasonable character of the noises and the effect produced by them upon plaintiff and his property, in view of the law of this state and that prevailing in other states, quoted from supra, we deem them to be sufficiently explicit.

The judge of the lower court well knows the locus involved in this case and all the witnesses whose evidence was adduced. He resolved the questions of fact against defendant. In view of this situation, if we were in doubt as to the correctness of his conclusions, it would be our obvious duty to affirm the judgment appealed from.

However, a careful study of the record leads us to the same conclusions as were reached below. And for these reasons, the judgment appealed from is affirmed with costs.