**Divorce** ⬤⟾49(1)—**No condonation of adultery in absence of knowledge thereof.**

In a husband's suit for an absolute divorce on the ground of adultery, there could be no condonation defeating plaintiff's right to a decree; where there was no evidence that he knew of the acts of adultery until after his separation from his wife.

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; Harney Felix Brunot, Judge.

Suit by Thomas Smith against Evelyn Hubo Smith. Judgment for plaintiff, and defendant appeals. Affirmed.

Cross & Moyse, of Baton Rouge, for appellant.

G. W. Burgess and H. K. Strickland, both of Baton Rouge, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. This is an appeal by the defendant wife from a judgment granting her husband an absolute divorce based on the ground of adultery alleged to have been committed by her with one David Marshall.

The defense of the wife consists of a denial of the adultery and an alternative plea of condonation in case the charge against her should be established.

The evidence, both positive and circumstantial, abundantly sustains the plaintiff's accusation against his wife, and sufficiently rebuts the defendant's plea of condonation. The utmost that can be said in support of the alternative plea is that the plaintiff became suspicious of the conduct of his wife with Marshall, and requested his wife to make him stay away.

There is no evidence that the plaintiff knew of the acts of adultery until after his separation from his wife. There could be no condonation in such circumstances which would defeat the plaintiff's legal right to a divorce. It would serve no useful purpose to discuss the evidence in detail.

The district judge considered the witnesses for the plaintiff praiseworthy, and believed their testimony, and no sufficient reason is presented or suggested whereby we would be authorized to find to the contrary. Certainly there is no error manifest or lurking in the record that we can discover.

The judgment is therefore affirmed at appellant's cost.

———

(99 South. 493)

No. 24405.

## CRUMP v. CARNAHAN.

(Feb. 25, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Nuisance** ⬤⟾3(5) — **Plant for pasteurizing and distributing milk not a nuisance in itself.**

A plant used for pasteurizing and distributing milk, located in a city, cannot be classed as a public or private nuisance within and of itself, unless managed and operated in a manner making it so.

**2. Nuisance** ⬤⟾33—**Finding that pasteurizing and milk distributing plant was not a nuisance sustained.**

In a suit to have a pasteurizing and milk distributing plant declared a public nuisance and to prohibit its operation, evidence as to the equipment and manner of conducting the plant *held* to sustain a finding for defendant.

Appeal from Civil District Court, Parish of Orleans; Wynne G. Rogers, Judge.

Suit by Robert G. Crump against Mrs. Mary M. Carnahan, widow of John W. Carnahan. Judgment for defendant, and plaintiff appeals. Affirmed.

Henry G. McCall and Charles Louque, both of New Orleans, for appellant.

Merrick & Schwarz, of New Orleans, for appellee.

By Division C, composed of OVERTON, ST. PAUL, and THOMPSON, JJ.

THOMPSON, J. The plaintiff and his family reside at the corner of Calhoun and South Robertson streets, this city, the residence facing the last-named street. The defendant owns and operates a milk pasteurizing plant and milk distributing depot located about the center of the block on the opposite side of Calhoun street from the plaintiff. The defendant's residence is between the milk plant and the plaintiff's residence, and both face South Robertson street. The defendant also has a stable for housing her live stock, located on the opposite side of South Robertson street from her residence and on the opposite side of Calhoun street from plaintiff's residence.

The purpose of this suit is to have the pasteurizing and milk distributing plant declared to be a public nuisance, and to enjoin and prohibit the defendant from operating the same.

The gravamen of plaintiff's complaint, reduced to matters worthy of consideration, is that the defendant has failed to provide the smokestack of the engine and boiler with a smoke consumer as required by law; that the defendant permits her mules to roam day and night, causing destruction to plaintiff's lawn and flower beds; that she permits her employés to rattle tin cans and milk bottles, and to talk boisterously and blasphemously and to yell at the mules, the result of all of which is that petitioner and his family are being constantly annoyed and disturbed in the peaceful enjoyment of their property and home.

The charges are denied by the defendant, though it is admitted that there are some noises incident to the operation of the business and rattling of milk cans in unloading and moving the same, but that it is not such as to annoy and disturb a normal person. It is further alleged that defendant is putting up a modern pasteurizing plant with modern improvements, which was nearly completed before the filing of this suit, and when completed there will be practically no night work required to carry on said business.

After hearing the evidence the district judge rejected the plaintiff's demand, and he appeals.

There can be no doubt of the soundness of the rule that every person is required to use his own property and to conduct his business in such a manner as not to cause undue annoyance, disturbance, and discomfort to his neighbors, nor to impair the reasonable enjoyment of his neighbor's home. On the other hand, it is said that the consensus of the better judicial thought is that an occupation or business lawfully located and followed is never, per se, a nuisance, so that such an occupation is not to be denounced as a nuisance, except to the extent that it is a nuisance. Froelicher v. Southern Marine Works, 118 La. 1084, 43 South. 882.

[1] The defendant's dairy business was a going concern, and her pasteurizing plant was equipped and established and in operation long before plaintiff located and established his home in that neighborhood. The business was a lawful one, and it was not being operated in violation of any state law or city regulation, so far as the record shows. The supplying of the citizens with good, wholesome, pasteurized milk is a very desirable and an extremely useful and important occupation or business. Such a plant as the one under consideration, used for the purposes stated, cannot therefore be classed as a public or private nuisance within and of itself, unless managed and operated in a manner so as to make it so.

[2] There were ten witnesses sworn in behalf of the plaintiff, and the substance of their testimony is that they were frequently

annoyed and disturbed at night by the noise from the defendant's plant occasioned: (1) By the knocking and the handling of the milk cans, and the loading of the cans into the wagons; (2) of the noise from the machinery; and (3) by the loud talking and cursing of defendant's employés; and (4) that large and dense volumes of smoke were poured out from the smokestack, so much so that doors and windows had to be closed, and that clothes hung out on lines in the yards are soiled from the smoke to such an extent that they have to be rewashed.

Sixteen witnesses were sworn on behalf of the defendant, some of whom reside in close proximity to the plant, and as near thereto as some of the plaintiff's witnesses. The substance of their testimony is that they were not annoyed and disturbed by the noise and the smoke emanating from defendant's plant; that the noise and smoke was no more than might normally and ordinarily be expected from the operation of that kind of business. It is shown that the smokestack was provided with a spark arrester and with smoke consumers as good as can be had, and that there are no real smoke consumers.

It further appears to be undisputed that there are in the vicinity of the plaintiff's home three smokestacks besides the one of defendant: the Ursulines', Tulane's, and Newcomb's, and that the smoke that comes from Tulane University is ten times the volume of that emitted from the smokestack of defendant.

So far as the stable is concerned, it appears that it is kept in accordance with the health and sanitary regulations; the stable has a manure pit, and the manure at intervals is hauled away to be used in fertilizing vegetable gardens.

That there was loud talking and sometimes cursing by the employés there can be no doubt, but not more than might be expected in a plant employing as many helpers and drivers as were employed by the defendant.

It is unnecessary to review the testimony in detail. Suffice it to say that the plaintiff has failed to sustain the charges to such an extent as to justify the court in ordering the defendant to close up or remove her business.

Whatever complaints may have at one time been justified, it appears that, before and at the time of the trial in the lower court, considerable improvements had been made to obviate as much as possible the things complained of. Indeed, something more than $25,000 had been spent, and a more modern plant and improvements undertaken before this suit was filed. A chimney 60 feet high was erected, noiseless motors put in, silent conveyors for milk cans installed, and a new spark arrester attached.

The case involves purely a question of fact, which was peculiarly within the province of the trial judge. He solved the issue in favor of the defendant, and we cannot say that he erred.

The judgment is affirmed, at the cost of plaintiff and appellant.