This is a suit for damages alleged to have been caused by the crowing of a big red rooster, and for an injunction to prevent like disturbances in the future. For a cause of action, plaintiffs filed the following petition:
"I. That petitioner, Mrs. Leonora Myer, is the owner of the premises situated in the City of Shreveport and known as Municipal No. 554 Kings Highway, and that petitioner, Jacob S. Myer, is the son of Mrs. Leonora Myer, and resides with her in the residence at 554 Kings Highway.
"II. Petitioners now show that Frank S. Minard, also a resident of your said Parish and State, resides at Municipal No. 540 Kings Highway, in the City of Shreveport, Louisiana, which premises adjoin the premises owned and occupied by your petitioners as aforesaid.
"III. Petitioners further show that the said Minard owns and maintains on his premises several roosters and that said roosters constitute and for some time in the past have constituted a flagrant and private nuisance, as is more particularly hereinafter set out.
"IV. Petitioners further show that for the five or six weeks immediately prior to the date of filing this petition, the said roosters, and particularly a large red rooster, have begun to crow at the hour of approximately five o'clock (four o'clock Standard Time) in the morning, and that said roosters, and particularly said red rooster, continue to crow loudly at intervals of approximately fifteen minutes until about six-thirty A. M.
"V. Petitioners now show that the noise, aural disturbance, din and cacophony produced by the crowing of said roosters can be distinctly heard by petitioners during the period mentioned, and that petitioners have been for the period of several weeks mentioned above, and up to the time of the filing of this petition are awakened from their slumbers by the din and noise created by the crowing of said roosters.
"VI. Shows that the loss of sleep and deprivation of rest sustained by petitioners on account of said noise has produced in the plaintiffs a condition of nervousness, and unless said condition is stopped, will result in extreme nervousness and mental and physical disorders.
"VII. Petitioners show that they have remonstrated with said Minard with reference to said roosters, and have called upon him in writing to cause the discontinuance of the noise and din, and for the suppression of the nuisance above set out, but without avail, and that they are entitled to a judgment herein enjoining and inhibiting said Minard from further permitting said roosters to crow during the period above mentioned, or any other period or periods of the night, and also for damages commensurate with the inconvenience, annoyance and injury suffered by them up to the time of beginning this action.
"VIII. Petitioner Mrs. Leonora Myer shows that she is entitled to the sum of $500.00 damages for the annoyance, inconvenience and disturbance of her morning slumbers by reason of the unlawful and tortious crowing of said roosters, and particularly of said large red rooster, above described, and that petitioner Jacob S. Myer is likewise entitled to the sum of $500.00 damages for the annoyance, inconvenience and disturbance of his morning slumbers by reason of the unlawful and tortious crowing of said roosters, and particularly of said large red rooster, which amounts are in no way excessive, and represent the actual damages suffered and sustained by petitioners.
"Wherefore, petitioners pray for service hereof, with citation upon said Frank S. Minard, and after all legal delays and due trial had, for judgment permanently enjoining and inhibiting said defendant from continuing to maintain said roosters, or any other roosters, and to allow them to crow so as to disturb the peace and slumbers of petitioners, and commanding him to cause the discontinuance of the said nuisance, and the further crowing of said roosters, and to fully abate the nuisance above described; and awarding damages to petitioner Mrs. Leonora Myer in said sum *Page 74 
of $500.00, with legal interest from judicial demand, and in favor of petitioner Jacob S. Myer in the like sum of $500.00, with like interest from judicial demand, together with all costs of this suit."
Defendant filed exceptions of no cause and no right of action and the exception of no cause of action was sustained by the lower Court. Plaintiffs filed a motion for a re-hearing and amended their petition alleging that the City of Shreveport has a population of 100,000 inhabitants, and that the section of the City in which petitioners and defendant reside, as well as the general area, is exclusively a residential district and has been for many years and there are no areas in said locality adapted to the use of poultry farms or the raising of chickens, and, in any event, the keeping of said rooster was and is not essential to raising chickens. The rehearing was granted and after argument thereon on the exceptions filed to the amended and original petitions, the lower Court rendered judgment sustaining the exception of no right of action and dismissed plaintiffs' suit. They are now prosecuting this appeal.
Plaintiffs do not allege that defendant's rooster or other chickens are improperly housed or fenced. They do not complain of any insanitary conditions due to the chickens. They do not allege that the chickens are allowed to come on their property to scratch up the flowers, or otherwise desecrate their premises. Their sole and only complaint is that the big red rooster crows at five o'clock A. M. and every fifteen minutes thereafter until six-thirty A. M. each morning. That is, he crows seven times each morning. They do not complain of the rooster crowing at midnight or any other hour of the night or day. This big red rooster is a most unusual bird if he limits his crowing to the hours complained of by plaintiffs. It is not alleged by them that the crowing of the big red rooster was any different from that of any other rooster, therefore, under the allegations of plaintiffs' petition, the only question presented is whether or not the usual crowing of a rooster in the morning hours is a nuisance which plaintiffs are in law entitled to have abated. In Paragraph VII of the petition, plaintiffs allege that they are entitled to a judgment enjoining and inhibiting defendant from further permitting the said rooster to crow during the period of time set forth in their petition, or at any other time during the night.
[1] Although there seems to be nothing impossible in these fast-moving times, we doubt if anyone has yet learned how to stop a rooster from crowing in the early morning, other than by wringing its neck. Therefore, the right claimed by plaintiffs is the right to prohibit defendant from keeping a rooster on his premises. At this point we wish to state there is no claim by plaintiffs that there is a law prohibiting the keeping or raising of chickens in the City of Shreveport. We are therefore justified in assuming that there is no such law. The crowing of the cock in the early hours of the morning is not a nuisance per se, and it is not alleged to be a nuisance due to any unlawful or improper conduct of defendant in the handling or keeping of said rooster on his premises.
Our courts recognize the distinction between a lawful business, improperly operated, so as to constitute a nuisance, and one properly operated that causes some inconvenience to the residents of a neighborhood. In the case of Crump v. Carnahan,155 La. 648, 99 So. 493, the Court said:
"There can be no doubt of the soundness of the rule that every person is required to use his own property and to conduct his business in such a manner as not to cause undue annoyance, disturbance, and discomfort to his neighbors, nor to impair the reasonable enjoyment of his neighbor's home. On the other hand, it is said that the consensus of the better judicial thought is that an occupation or business lawfully located and followed is never, per se, a nuisance, so that such an occupation is not to be denounced as a nuisance, except to the extent that it is a nuisance. Froelicher v. Southern Marine Works, 118 La. [1077], 1084, 43 So. 882.
"The defendant's dairy business was a going concern, and her pasteurizing plant was equipped and established and in operation long before plaintiff located and established his home in that neighborhood. The business was a lawful one, and it was not being operated in violation of any state law or city regulation, so far as the record shows. The supplying of the citizens with good, wholesome, pasteurized milk is a very desirable and an extremely useful and important occupation or business. Such a plant as the one under consideration, used for the purposes stated, cannot therefore *Page 75 
be classified as a public or private nuisance within and of itself, unless managed and operated in a manner so as to make it so."
In Meyer v. Kemper Ice Company, Inc., 180 La. 1037,158 So. 378, 380, Mrs. Meyer sought to enjoin the Ice Company from operating an ice plant next door to her residence. She alleged that defendant had installed in its plant an internal combustion, or crude oil engine, which rested upon a surface foundation of concrete, which has its exhaust on the side of the plant nearest to her residence, being about seventy feet therefrom; that when said plant is in operation, the excessive vibration of the engine causes every portion of her residence to shake, windows, furniture, mantels, walls, and articles such as dishes on tables to rattle. That the noise from the exhaust is of such a violent and disturbing nature as to make an ordinary conversation or sleep almost impossible. In rejecting plaintiff's demands for an injunction, the Court said:
"The testimony leaves us in no doubt that the mere presence of this plant, located as it is on a lot adjacent to plaintiff's residence, is objectionable to her, nor do we doubt that the noise and vibrations resulting from the operation of the plant are noticeable. But we think plaintiff, like those of her neighbors who came to court, will soon become accustomed to, and pay no attention to, them, if she wills to do so. The vibrations are only slight, and were not noticed by any of plaintiff's witnesses until their attention was called to them. Some of her witnesses and some of those called by defendant said that by placing the hand against the walls or a windowpane a slight vibration or tremor was felt, but not otherwise.
"The noise is not great, nor excessive. Noise alone or noise accompanied by vibrations may create a nuisance subject to an action for damage or injunction, even though it arises from the carrying on of a trade or business lawful in its nature. But, to have this effect, the noise must be excessive, unreasonable in degree, and of such character as to produce actual, physical discomfort and annoyance to a person of ordinary sensibilities. As was said in Froelicher v. Ironworks, 111 La. 705, 35 So. 821, 823, 64 L.R.A. 228, the 'injury must be real and not fanciful.' In that case, where the facts were the same as those in Froelicher v. Southern Marine Works, 118 La. 1077, 43 So. 882, 883, the noises complained of by plaintiff resulted from the operation of ironworks and machine shops where boilers were repaired and where there was 'caulking and riveting of iron, steel tanks, and boilers, the screeching and rumbling noise of the gearing, the hammering of iron, steel, copper, and brass, the screeches of the emery wheel as the tools and pieces are sharpened, the vibrations caused by the heavy moving machinery,' etc.
"The court held that such noises were 'excessive and tortious,' and therefore a nuisance. But the court took occasion to say at page 1086 of 118 La., 43 So. 882, 886:
" 'We deem it also proper to state here that only downright discomfort is actionable. Small inconveniences do not recommend themselves as causes sufficient to close down an industry.'
"In LeBlanc v. Orleans Ice Mfg. Co., 121 La. 249, 46 So. 226, 227, 17 L.R.A.,N. S., 287, the court said that the owner of an ice plant must take all proper precautions to prevent noise, smoke, etc., from becoming a nuisance to the neighbors, and to that end must comply with all requirements of police regulations, and, 'this being done, unavoidable noise, smoke, etc., must be considered as an inconvenience to which the neighbors must submit for the public good. Of course, a city ordinance or permit cannot validate a nuisance. Blanc v. Murray, 36 La. Ann. 162,.51 Am.Rep. 7. The noise of a factory is not a nuisance per se. City of New Orleans v. Lagasse,114 La. 1055, 38 So. 828.'
"The court found in that case that the noise was slight and there were no vibrations. Here there is considerable noise and some vibration. But the principle there announced is applicable here.
"Defendant built its plant under a permit from the city authorities. Its machinery is all in good condition, and the operation of a plant occasions no more noise or vibration than necessarily results from the operation of any other plant of its kind, and, while this noise may be to some extent annoying to plaintiff, she must submit to it 'for the public good'; it appearing that the noise is not unreasonable or excessive.
" 'Mere noise may be a nuisance, if it be of such a character as to be productive of actual physical discomfort and annoyance to a person of ordinary sensibilities, although *Page 76 
such noise play result from the carrying on of a trade or business in a town or city. But as many useful acts are necessarily attended with more or less noise, reasonable noises in an appropriate locality are not necessarily nuisances, even though they are disagreeable and annoying.'
"See 'Noise,' 29 Cyc. 1185; 46 C.J. 683; 20 R.C.L. 445, § 60."
See also Irby v. Panama Ice Company, Inc., 184 La. 1082,168 So. 306.
Under Annotation, "Poultry Yard or Plant as Nuisance," 81 A.L.R. 1207, we find the following:
"The characteristic noises and odors issuing from a chicken yard and house which are maintained in a cleanly manner and cared for so as not injuriously to affect the health of any normal person in the neighborhood are not a nuisance, although they may make neighboring property uncomfortable as a residence for invalids. Wade v. Miller, 1905, 188 Mass. 6, 73 N.E. 849, 69 L.R.A. 820, wherein the Court said: 'The defendant had a right to the lawful use and enjoyment of her premises, and this would include the keeping of hens in houses and a yard used for that purpose, which are shown by the report to have been maintained in a cleanly manner, and cared for in such a way as not to injuriously affect the health of any normal person living in that neighborhood. Although the odor arising from the henhouses and yard, which at times was accompanied by the characteristic cry made by their occupants, may have been unpleasant, it does not appear by the report to have been physically uncomfortable or unbearable. Indeed, the findings of fact fail to show that the conditions existing on the premises of the defendant were abnormal or differed substantially from those usually found in the country, where the ordinary incidents arising from keeping barnyard fowls are not considered extraordinary or peculiarly irritating, even to sensitive persons.' "
[2] We have not been able to find a decision in any jurisdiction where an injunction was prayed for simply to stop the crowing of a rooster. Neither counsel for the litigants here has cited any such case, and we feel satisfied in presuming there is no such case of record. The test in all such cases is whether the nuisance complained of will or does produce such a condition of things as in the judgment of reasonable men is naturally productive of actual physical discomfort to normal persons of ordinary sensibilities and of ordinary tastes and habits.
[3] We cannot conceive of a normal person, endowed with ordinary sensibilities and ordinary habits, being greatly discomforted by the announcement of a new day from the well-trained voice of a stately cock, the sound of which is used as a symbol of good cheer by many advertisers. The voice of the rooster can be heard daily in motion pictures, on the radio and at the birth of a new day all over the world, whether in the country, town or city, one only has to awaken to hear the cheery voice of Chantecler announce the day. He has been doing that all over the world since before the year 1 and, so far as we can find, no one has until now tried to silence his cheerful greetings.
The time for this action is most inopportune, with the Government taking for the Armed Forces of our Nation all the broilers, friers, excess hens and eggs from our large poultry-producing centers, as well as a great part of the beef and other meats, and the Agriculture Department at Washington urging everyone to raise poultry, eggs, Victory gardens and other foods. The figures given out at Washington showing the quantity of vegetables produced and canned from Victory gardens last year were astounding and the figures, if given, showing the number of chickens raised and eggs produced in back yards of towns and cities would be more astounding. If we destroyed the roosters, within a very short time the chicken family would become extinct and the familiar American breakfast of bacon and eggs would be no more.
The rooster and his crow, besides being the symbol of good cheer and happiness, have been made use of for many purposes as far back as centuries go. The Indonesian seafarers made use of them on their ships to keep the man-eating sharks away. When the rooster crowed aboard ship — and every ship carried one or more — the sharks thought they were near land and, through fear of being washed ashore to lie there and die, swam away from the ship thereby relieving the seamen from their menace. Without further proclaiming the cheerful and gallant qualities of the big red rooster, we are convinced beyond a reasonable doubt that the cheery outbursts at the break of day cannot be so disturbing as to become a nuisance to *Page 77 
a normal person of ordinary sensibilities and of normal habits and tastes, and that to continue to allow the rooster to crow is not in derogation of the rights of the plaintiffs.
The judgment of the lower Court is therefore affirmed, with costs.