256 So.2d 127 (1971)
260 La. 384
Francis H. HILLIARD
v.
Elden Ray SHUFF.
No. 51069.
Supreme Court of Louisiana.
December 13, 1971.
Dissenting Opinion January 5, 1972.
Rehearings Denied January 17, 1972.
*128 Pugh, Buatt, Landry & Pugh, Lawrence G. Pugh, Jr., Crowley, for plaintiff-appellant-relator.
Edwards Law Firm, Homer Ed Barousse, Jr., Crowley, for defendant-appellee-respondent.
SANDERS, Justice.
The plaintiff, Francis Hilliard, sued to enjoin Elden Ray Shuff from maintaining four aboveground fuel storage tanks on his property adjacent to the Hilliard residence. The Fifteenth Judicial District Court held that plaintiff's evidence failed to establish a nuisance and denied injunctive relief. The Third Circuit Court of Appeal affirmed. 241 So.2d 56.[1] We granted certiorari to review the judgment of the Court of Appeal. 257 La. 454, 242 So.2d 577 (1971).
The facts of the case are clear. Hilliard owns a tract of land in a commercial area north of Interstate Highway 10 near Crowley, Louisiana. He and his family live on the plot.
The defendant, Shuff, holds an adjoining four acre tract under lease. He uses the site for a truck stop, including a service station, a restaurant, and a car wash. Gasoline and diesel fuel sales average 3,000 gallons per day.
In order to meet the demand for motor fuel, Shuff installed four used, aboveground storage tanks within 5 feet of Hilliard's property and about 150 feet from his residence. The tanks have a combined capacity of 58,800 gallons. He uses the tanks to store 25,200 gallons of gasoline and 33,600 gallons of diesel fuel. Both gasoline and diesel fuel are volatile. They generate high internal tank pressures.
The tanks were neither designed nor built for the storage of gasoline and diesel fuel. As constructed, they were designed for the storage of crude oil only. Crude oil is much less volatile than either gasoline or diesel fuel and generates no excessive pressure.
Because of the higher pressures of gasoline and diesel fuel, the tanks were vented. The vents, however, operate by releasing fumes, which are flammable and dangerous. The record reflects that they can be ignited by a random spark.
Defendant recognized the danger by posting the following warning sign on the tanks: Flammable and dangerous. No smoking within 50 feet. In testimony, defendant's own expert inferred that an ignition hazard existed within 20 feet of the tanks. The record is clear that the zone of danger extends well into the Hilliard property.
Plaintiff contends that the maintenance of these tanks deprives him of the use of 45 feet of his property and poses a threat to his residence. He seeks to have the tanks moved to another portion of defendant's property or placed underground.
Plaintiff relies upon the following articles of the Louisiana Civil Code:
"Art. 667. Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
"Art. 668. Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, *129 yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
"Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor's house, because this act occasions only an inconvenience, but not a real damage."
"Art. 669. If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place."
These code articles control the disposition of the case. The storage of basic fuels, a lawful activity, does not, without more, violate these articles. Phrased in terms of nuisance, the storage of such fuel does not constitute a nuisance per se. See Canone v. Pailet, 160 La. 159, 106 So. 730 (1926); Crump v. Carnahan, 155 La. 648, 99 So. 493 (1924); Galouye v. A. R. Blossman, Inc., La.App., 32 So.2d 90 (1948). When, however, the storage of fuel creates a substantial hazard to the adjoining property, the use of the property runs counter to the code articles. In determining whether the storage creates a substantial hazard to the adjoining property, the court must consider such factors as location, structure of the storage tanks, quantity of fuel stored, operational procedures, as well as the surrounding circumstances. See Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (1971); Borgnemouth Realty Co. v. Gulf Soap Corporation, 212 La. 57, 31 So.2d 488 (1947); Devoke v. Yazoo & M. V.R. Co., 211 La. 729, 30 So.2d 816 (1947); Froelicher v. Oswald Ironworks, 111 La. 705, 35 So. 821 (1903).
In Devoke v. Yazoo & M.V.R. Co., supra, this Court stated:
"It is the universally accepted rule of law that `The owner of property has a right to conduct thereon any lawful business not per se a nuisance, as long as the business is so conducted that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. But every business, however lawful, must be conducted with due regard to the rights of others, and no one has a right to erect and maintain a nuisance to the injury of his neighbor even in the pursuit of a lawful trade, or to conduct a business on his own land in such a way as will be injurious or offensive to those residing in the vicinity.'"
Defendant's use of crude oil tanks for the storage of gasoline and diesel fuel within a few feet of plaintiff's property offends these principles. The hazard created is not limited to structures, but threatens the physical security of the Hilliard family and others lawfully upon the premises.
As the dissenting judge in the Court of Appeal noted, the plaintiff cannot safely operate an automobile, truck, tractor, or even a power mower on his property within the danger zone.
That the plaintiff was aware that the tanks were being erected and made no complaint creates no bar to injunctive relief under the circumstances. The record does not reflect that plaintiff then had knowledge that, because of their improper design, they would create a hazard to his property.
A violation of the code articles relating to the use of property, however, requires no automatic injunction to remove the tanks. Robichaux v. Huppenbauer, supra. Injunction is an equitable remedy and should be carefully designed to achieve the essential correction at the least possible cost and inconvenience to the defendant.
*130 We note, as did the Court of Appeal, that the defendant made a substantial investment in the erection of the tanks. The record fails to reflect whether some corrective action short of removal or underground placement is feasible. Under these circumstances, a remand to the trial court for the reception of further evidence relative to methods of correction will best serve the interest of justice.
For the reasons assigned, the judgment of the Court of Appeal is reversed, and an injunction, both mandatory and prohibitory, is granted on such terms and conditions as the district court may find necessary after the reception of further evidence. For the determination of the terms and conditions of the injunction, the case is remanded to the Fifteenth Judicial District Court for further proceedings consistent with the views herein expressed. All costs are assessed against the defendant.
BARHAM, Justice (dissenting).
The plaintiff here is seeking injunctive relief from the threat of explosion of four aboveground storage tanks filled with gasoline and Diesel fuel. The majority states that such storage does not constitute a nuisance per se, but then holds that the storage of the fuels on the defendant's land creates a substantial hazard to the adjoining property of the plaintiff and is a nuisance. I cannot agree with this conclusion based upon the evidence in this record, nor can I agree with the legal principles relied upon to determine the existence of a nuisance.
It was correctly stated in the Court of Appeal opinion that before a lawful business can be abated as a nuisance, it must be shown that it causes serious and material discomfort and inconvenience to those in close proximity. The majority here finds that the hazard "threatens the physical security of the Hilliard family and others lawfully upon the premises", and that "the plaintiff cannot safely operate an automobile, truck, tractor, or even a power mower on his property within the danger zone". These statements of factual conclusions are totally unsubstantiated by the evidence. Nowhere is there any suggestion that the Hilliard family was not enjoying the full use of the property in every respect. Since it is readily concluded by the majority that the storage of such fuels in aboveground tanks is not the maintenance of a nuisance per se, then the evidence must establish the existence of an immediate hazard which constitutes a nuisance in fact. Proof of a nuisance in fact depends upon its location, the manner in which the act is conducted, and the other pertinent circumstances involved. Without such proof there can be no abatement of the activity complained of under a theory of nuisance. Borgnemouth Realty Co. v. Gulf Soap Corporation, 212 La. 57, 31 So.2d 488; Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385.
There is not a scintilla of evidence in this record to support a subjective finding that the plaintiff has in fact been disturbed in any manner in the enjoyment of his estate or has even been inconvenienced; nor is there any evidence that a custom of the place or a police regulation would forbid the work as constructed. Yet it is this approach which is relied upon by the majority when it invokes Civil Code Article 669. That article provides:
"If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place."
While I am of the opinion that the phrase "other different inconveniences" should be read into that article (see my concurrence in Robichaux v. Huppenbauer, supra) so as to include the type of activity involved here, I find this article inapplicable since there is no proof in this record to support a finding of the existence of an insufferable inconveniencea nuisance.
*131 Although I conclude that plaintiff failed to establish factually and legally that these tanks storing gasoline and Diesel fuel were a nuisance, I do not conclude that the plaintiff is not entitled to relief. I am of the opinion that relief should be granted in this casenot just partial relief as allowed by the majority, but total relief in the form of a permanent injunction prohibiting the defendant from storing gasoline and Diesel fuel in this manner at this particular location. The relief to which the plaintiff is entitled is provided by the rule of property announced in Article 667 of the Civil Code, reading as follows:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him." (Emphasis supplied.)
Under this rule of property there exists a servitude in favor of an estate upon the adjoining estate. Since the aboveground storage of gasoline and Diesel fuel in these renovated oil storage tanks presents a substantial hazard which "may" deprive the plaintiff of the enjoyment of his land or "may" cause him damage, injunctive relief is warranted. The dominant estate (here the plaintiff's) has a right to require the servient estate (the defendant's) to remove any work which threatens the enjoyment of his land or threatens to cause him damage. The exercise of this servitude does not depend on the subjective test of whether the owner or occupier of the dominant estate is in fact disturbed in his use and enjoyment of his land, nor does it depend upon proof of actual damage. The only requirement is an objective finding of probability that the owner of the dominant estate may at some time be deprived of enjoyment of his property or suffer damage because of the work made upon the servient estate. In the case at hand the expert and other testimony clearly establishes the objective determination which entitles the plaintiff to relief.
Article 667 is a valuable rule of property which establishes a legal servitude prohibiting the making of works on the servient estate which may damage the dominant estate. Its provisions are modified only by the language of Article 668 which excepts those kinds of encroachments upon the full enjoyment of an estate that are mere inconveniences. Reymond v. State, Through Department of Highways, 255 La. 425, 231 So.2d 375. It protects from possible deprivation of or damage to a real right. Article 668 makes certain that the legal servitude of Article 667 protects only from a work which may occasion "real damage" and not from a work which "occasions only an inconvenience". Inconveniences are regulated by Article 669, and are to be determined according to ordinance or to the custom of the place. Unlike the abatement of these inconveniences, abatement of encroachments on the servitude established by Article 667 does not depend upon neighborhood environment and practice or custom and regulations, but is mandated upon legal request.
Danger from fire and explosion which may be caused by the maintenance of a work on a neighboring estate is not a mere inconvenience. Just as excavations made upon the servient estate may be corrected before the land and the buildings of the dominant estate subside and fall, so may a work which threatens the dominant estate with fire and explosion be abated.
Like other servitudes, the servitude under Article 667, which confers the absolute right of abatement, may be lost by prescription. The timely exercise of the right of servitude such as plaintiff attempts here is therefore vitally necessary, for otherwise the dominant estate may later be relegated only to the remedies available under Article 669 after proof of subjective inconveniences which either ordinance or custom has established to be insufferable at that time and place and under the then existing circumstances.
In summation, this plaintiff has totally failed to establish that he has in any manner *132 suffered inconvenience by reason of the inadequacies of the storage facilities on defendant's land. The record is devoid of proof that plaintiff, his family, or his guests have at any time and in any way lacked full enjoyment of his property. Plaintiff does not complain that he desired and was unable to "operate an automobile, truck, tractor, or even a power mower * * * within the danger zone". Plaintiff does not even complain that he or his family is psychologically, emotionally, or mentally disturbed because these works exist on neighboring property. One of the Court of Appeal judges on application for rehearing correctly appraised the only testimony offered as to the quality of a nuisance: "* * * Plaintiff did not testify that these tanks interfered with his use of his property. * * *" Since the plaintiff has not shown that he suffers from a nuisance, an insufferable inconvenience, I fail to see how he has established any right for relief under Article 669. Plaintiff does, however, have a right to immediate and full abatement of the encroachment upon his legal servitude under Article 667.
For these reasons I respectfully dissent, being of the opinion that the plaintiff is entitled to the full injunctive relief sought.
NOTES
[1] Judge Hood dissented with written reasons. See 241 So.2d 59.